FILED UNDER SEAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER INC. IDENTIFIED IN ATTACHMENT A | Case No. 1:23-SC-31-BAH<br><br>**UNDER SEAL** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO VACATE OR MODIFY NON-DISCLOSURE ORDER
ISSUED PURSUANT TO 18 U.S.C. § 2705(b)
AND STAY TWITTER'S COMPLIANCE WITH SEARCH WARRANT**

Twitter is the leading global platform dedicated to fostering and safeguarding conversations among its users. To that end, Twitter's policy is to notify its users of any requests from law enforcement for account information, particularly requests for contents of communications, unless prohibited from doing so. On January 19, 2023, the government served a search warrant (the "Warrant") on Twitter for data associated with the account @realDonaldTrump (the "Target Account") accompanied with a non-disclosure order under 18 U.S.C. § 2705(b) (the "Non-Disclosure Order"), prohibiting Twitter from notifying the account owner, or anyone else, other than counsel. The Warrant requests public and non-public data, including private communications sent to or from the Target Account during the time period when Donald J. Trump, the user of the Target Account, was serving as President of the United States. The Non-Disclosure Order was issued by this Court based on an *ex parte* application, which Twitter has not seen.

1

Because the Non-Disclosure Order constitutes a content-based prior restraint on Twitter's speech, the government was required to submit facts demonstrating that the Non-Disclosure Order was narrowly tailored to serve a compelling government interest. The Non-Disclosure Order lists several potential governmental interests in keeping the Warrant secret, including destruction or tampering of evidence, intimidation of potential witnesses, notifying confederates, and fleeing from prosecution. But none of these interests can satisfy strict scrutiny in light of the significant publicity surrounding the Department of Justice's criminal investigation of the former President, including detailed news accounts of presidential aides and allies testifying before the grand jury, seizures of aides' electronic devices, a search warrant executed at the former President's home, and the televised press conference by Attorney General Merrick Garland announcing the Special Counsel's appointment and mandate to investigate former President Trump.

The Non-Disclosure Order in this case is particularly significant given that the Warrant seeks the contents of private communications sent to or from the then-President of the United States that raise unique and complex issues of executive privilege. Allowing Twitter the opportunity to notify the account holder would afford the user—the principal party in interest for executive privilege—an opportunity to address the legal issues surrounding a demand for presidential communications in this unique context, and give this Court a full adversarial process in which to evaluate them.

In sum, because the Non-Disclosure Order violates Twitter's First Amendment rights to communicate with its user, cannot be justified by a compelling governmental interest, and is not narrowly tailored, Twitter respectfully requests that this Court vacate or modify the Non-Disclosure Order issued pursuant to 18 U.S.C. § 2705(b) and permit Twitter to notify the user of

FILED UNDER SEAL

the account, or, in the alternative, his authorized representatives.[1] Twitter also respectfully requests this Court stay Twitter's compliance with the Warrant, pending the resolution of this challenge to the Non-disclosure Order, to (1) prevent irreparable injury to Twitter's interests that would occur if production under the Warrant were required prior to resolution, and (2) to preserve the status quo as to the user's interest in potentially seeking to assert privilege or otherwise curtail derivative use of potentially privileged communications. Finally, Twitter requests a hearing on this motion.

## BACKGROUND ON TWITTER

Twitter operates a global social media platform that fosters public and private conversations amongst its more than 450 million active monthly users. Twitter users may communicate with one another through "tweets" which may be accessible to the general public or visible only to the user's followers. Twitter also allows users to send private direct messages, known as "DMs", to other Twitter users. *See e.g., United States v. Sporn*, 2022 WL 656165, at *1 (D. Kan. Mar. 4, 2022). Twitter values its ability to safeguard the privacy of its users. Accordingly, Twitter's Privacy Policy makes clear to its users and to law enforcement that it will notify users of any law enforcement requests for their communications or data unless legally prohibited from doing so:

> For purposes of transparency and due process, Twitter's policy is to notify users (e.g., prior to disclosure of account information) of requests for their Twitter or Periscope account information, including a copy of the request, unless we are prohibited from doing so (e.g., an order under 18 U.S.C. § 2705(b)).[2]

---

[1] Twitter does not challenge the validity of the Warrant. Instead, Twitter brings this motion to enable the user of the Target Account to assert his own rights and privileges if applicable, and provide this Court with a full presentation on these issues.
[2] https://help.twitter.com/en/rules-and-policies/twitter-law-enforcement-support

3

FILED UNDER SEAL

Twitter's ability to communicate with its customers about law enforcement's efforts to access their communications and data – rooted in its contractual promises and historical commitment to privacy and transparency – is essential to its business model and fostering trust with its user base. Given its vast and diverse community of users, Twitter is not in a position to identify and assert its users' rights and privileges with respect to every government demand for communications and data. Moreover, Twitter might lack standing to assert the rights and privileges of its users. Such rights and privileges could include communications between attorneys and clients, journalists and sources, medical professionals and patients, clergy and laity, spouses, or politicians communicating in ways that might be covered by Speech and Debate Clause, executive privilege, or other official privileges. By notifying its users of government demands for communications and data, Twitter serves a critical role in enabling its users to identify, evaluate, and assert for themselves those rights and privileges that could prohibit government search and seizure.

## PROCEDURAL HISTORY

On January 17, 2023, the Special Counsel's Office obtained a warrant, compelling Twitter to disclose communications and data related to the Target Account. The Target Account is the primary Twitter account of former President Donald J. Trump. Former President Trump routinely used the Target Account for presidential communications during this period. *See Biden v. Knight First Amendment Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1222 (2021) (Thomas, J. concurring) ("Mr. Trump often used the account to speak in his official capacity."). Twitter has provided communications and data from the Target Account for the period of Mr.

4

FILED UNDER SEAL

Trump's presidency to the National Archives and Records Administration ("NARA").[3] The Warrant seeks information from a period at the end of Mr. Trump's presidency, specifically from October 2020 to January 2021.

The Warrant broadly seeks information, both public and private, content and non-content. Significantly, the Warrant seeks "[a]ll content, records, and other information relating to communications sent from or received by the SUBJECT ACCOUNT from October 2020 to January 2021, including . . . The content of all direct messages sent from, received by, stored in draft form in, or otherwise associated with the SUBJECT ACCOUNT," as well as "All other content, records, and other information relating to all other interactions between the SUBJECT ACCOUNT and other Twitter users from October 2020 to January 2021." (Warrant, at 5.) The Warrant requires production within 10 days of issuance of the Warrant. (Warrant, at 6.)

The Warrant was accompanied by a Non-Disclosure Order issued pursuant to 18 U.S.C. § 2705(b), prohibiting Twitter from disclosing the "existence or content of the Warrant to any other person (except attorneys for PROVIDER for the purpose of receiving legal advice)," for a period of 180 days. (Order, at 2.) The Non-Disclosure Order states that there were "reasonable grounds to believe that such disclosure will result in destruction of or tampering with evidence, intimidation of potential witnesses, and serious jeopardy to the investigation," and that

---

[3] Data associated with the account during the timeframe that Mr. Trump was president was produced to and is maintained by the NARA in accordance with the Presidential Records Act. 44 U.S.C. §§ 2201 *et seq.*, *See, e.g.,* NARA website, "The National Archives received records from the Trump Administration, which ended on January 20, 2021. We are in the process of preserving and providing access to these records, including all official Trump Administration social media content and deleted posts from @realDonaldTrump and @POTUS." available at https://www.archives.gov/foia/pra-trump-admin; *see also* Letter from NARA Archivist David S. Ferriero to Hon. Carolyn B. Maloney, Chair of House Committee on Oversight and Reform (Feb. 18, 2022), noting that "Twitter provided us with a copy of the available account data [from @realDonaldTrump]," available at: https://www.archives.gov/files/foia/ferriero-letter-to-maloney-on-trump-presidential-records-on-social-media-platforms.02.18.2022.pdf.

5

"immediate notification to the customer or subscriber of the TARGET ACCOUNT(S) would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution." (Order, at 1.)

Twitter has preserved communications and data from the Target Account available in its standard production tooling used to handle law enforcement process. Twitter has also alerted the Special Counsel's Office of its concerns related to the Non-Disclosure Order and the restriction on its First Amendment rights in this case and the fact that much of the information sought in the Warrant has been produced to NARA and is likely covered by the Presidential Records Act. The Special Counsel's Office has declined to modify or withdraw the Non-Disclosure Order.

## APPLICABLE LAW

A non-disclosure order is a content-based prior restraint on speech – the "most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), which "comes to [a court] with a 'heavy presumption' against its constitutional validity." *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971); *Matter of Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020) (non-disclosure orders to service providers are content-based prior restraints subject to strict scrutiny under the First Amendment); *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 881-82 (S.D. Tex. 2008) (holding that § 2705(b) nondisclosure orders are content-based prior restraints on speech); *Microsoft Corp. v. U.S. Dep't of Justice*, 233 F. Supp. 3d 887, 905 (W.D. Wash. 2017) (same). A non-disclosure order is therefore invalid unless the government "can demonstrate that it passes strict scrutiny—that is, unless it is justified by a compelling government interest and is narrowly drawn to serve that interest." *Brown v. Ent. Merchs. Ass'n*,

564 U.S. 786, 799 (2011); *Taucher v. Rainer*, 237 F. Supp. 2d 7, 13 (D.D.C. 2002) ("[T]he Supreme Court has specifically and unequivocally demanded that the government show the most compelling reason for *any* prior restraint on speech.") (emphasis in original).

Because a § 2705(b) non-disclosure order is a content-based prior restraint, two consequences follow. First, because the order operates as a prior restraint, it can be issued only pursuant to the "procedural safeguards" that the Supreme Court described in *Freedman v. Maryland*, 380 U.S. 51 (1965)—safeguards "that reduce the danger of suppressing constitutionally protected speech," *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 559 (1975). Specifically, "the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002). Second, because the order is both content-based and a prior restraint, the highest level of judicial scrutiny applies. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015) (content-based laws must "satisfy strict scrutiny"); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963) (prior restraint comes to court "bearing a heavy presumption against its constitutional validity"). Accordingly, a non-disclosure order must be "narrowly tailored to serve compelling state interests," *Reed*, 576 U.S. at 163, and there must be no "less restrictive alternatives [that] would be at least as effective" as the non-disclosure order, *Reno v. ACLU*, 521 U.S. 844, 874 (1997).

## ARGUMENT

### I. This Non-Disclosure Order Cannot Withstand Strict Scrutiny

The government cannot overcome strict scrutiny here: there is no compelling governmental interest in maintaining the secrecy of this Warrant from everyone. Moreover, even if the government were able to make such a showing, the Non-Disclosure Order is not narrowly tailored to the least restrictive means available to accommodate Twitter's First Amendment

FILED UNDER SEAL

interests in notifying its user and providing him an opportunity to raise the weighty and unique questions of law surrounding the privilege attached to private presidential communications.

### A. Government Cannot Demonstrate a Compelling Interest in Secrecy

In this case, the government cannot credibly show that the Non-Disclosure Order prohibiting Twitter from disclosing information about the Warrant serves a compelling governmental interest. Given the voluminous publicly available information about the investigation of the former President (including, importantly, his statements and communications), the government lacks a compelling interest in maintaining the Non-disclosure Order here.

First, the Department of Justice's criminal investigation into former President Trump and his potential role in the efforts to overturn the 2020 presidential election and the January 6, 2021 attack on the United States Capitol, has been public for several months prior to the issuance of this Warrant. Specifically, the news media has reported extensively that presidential advisors, including White House counsel and senior staff, have been subpoenaed to testify before a federal grand jury investigating those events. *See e.g.*, Casey Gannon et al., *Former Trump White House Counsel and His Deputy Testify to Jan. 6 Criminal Grand Jury*, CNN (Dec. 2, 2022), *available at* https://www.cnn.com/2022/12/02/politics/pat-cipollone-district-courthouse/index.html; Katelyn Polantz & Hannah Rabinowitz, *First on CNN: Top Trump Advisor Stephen Miller Testifies to January 6 Federal Grand Jury*, CNN (Nov. 29, 2022), *available at* https://www.cnn.com/2022/11/29/politics/stephen-miller-testifies-january-6-federal-grand-jury-trump/index.html; Olivia Olander, *DOJ Sends Some 40 Subpoenas to Trump Aides*, POLITICO (Sept. 12, 2022) *available at* https://www.politico.com/news/2022/09/12/justice-subpoena-trump-aides-00056274; Bart Jansen, *Justice Department Subpoenas Dozens of Trump Aides in Apparent Escalation of Investigation, According to Reports*, USA Today (Sept. 12, 2022),

8

FILED UNDER SEAL

*available at* https://www.usatoday.com/story/news/politics/2022/09/12/trump-aides-subpoenaed-justice-department-jan-6-capitol-attack/10361875002/; Kyle Cheney, *Two Top Pence Aides Appear Before Jan. 6 Grand Jury*, POLITICO (Jul. 25, 2022), *available at* https://www.politico.com/news/2022/07/25/pence-chief-of-staff-january-6-00047772.

On November 18, 2022, the Department of Justice confirmed the criminal investigation into former President Trump in a televised press conference by Attorney General Merrick Garland. *See*, https://www.justice.gov/opa/pr/appointment-special-counsel-0. In the press conference, Attorney General Garland announced the appointment of a special counsel in "two ongoing criminal investigations that had received significant public attention" – the January 6th Capitol riot investigation and the former President's retention of classified documents. *Id.* Attorney General Garland noted that the appointment of a special counsel was necessary because of "the former President's announcement that he is a candidate for President in the next election." The Attorney General's statement made clear that the former President was a potential target of both criminal investigations.

It is also well known that, as part of its investigation, the Department of Justice is closely examining the private communications of people within the scope of its investigation, including the former president's aides and allies. Indeed, the Department of Justice has obtained search warrants for electronic devices of numerous close associates of former President Trump. *See e.g.*, Steve Benen, *DOJ Seizes Team Trump Phones as Part of Intensifying Jan. 6 Probe*, MSNBC (Sept. 13, 2022), *available at* https://www.msnbc.com/rachel-maddow-show/maddowblog/doj-seizes-team-trump-phones-part-intensifying-jan-6-probe-rcna47448; Ella Lee, *Pennsylvania Rep. Scott Perry, a Trump Ally, Says FBI Agents Seized His Cellphone*, USA TODAY (Aug. 10, 2022), *available at*

9

https://www.usatoday.com/story/news/politics/2022/08/10/scott-perry-fbi-seized-cellphone/10284599002/; Scott Gleeson, *MyPillow CEO, Trump Ally Mike Lindell Says FBI Issued Subpoena, Seized Phone at a Hardee's*, USA TODAY (Sept. 14, 2022), *available at* *https://www.usatoday.com/story/news/nation/2022/09/14/my-pillow-ceo-trump-ally-fbi-seized-phone/10375227002/*; Alan Feuer & Adam Goldman, *Federal Agents Seized Phone of John Eastman, Key Figure in Jan. 6 Plan*, N.Y. Times (Jun. 27, 2022), *available at* https://www.nytimes.com/2022/06/27/us/politics/john-eastman-jan-6.html. The Federal Bureau of Investigation ("FBI") has also executed a search warrant at the home of a Trump ally to seize electronic devices. *See e.g.* Alan Feuer at al., *Federal Authorities Search Home of Trump Justice Dept. Official*, N.Y. Times (Jun 23, 2022), *available at* https://www.nytimes.com/2022/06/23/us/politics/jeffrey-clark-trump-justice-dept.html.

Former President Trump is well aware of the existence of the Special Counsel's investigation. Indeed, the former President specifically addressed the appointment of a Special Counsel on the same day the Justice Department announced the appointment. *See, e.g.*, Former President Trump Statement on Special Counsel Appointment, available at https://www.c-span.org/video/?524379-1/president-trump-statement-special-counsel-appointment. Former President Trump is also keenly aware of the two investigations that were delegated to the Special Counsel – and the fact that those investigations included the execution of search warrants seeking evidence against him. On several occasions, he has publicly addressed his role in the January 6th Capitol riot and the August 2022 search warrant executed at his residence seeking classified documents.

In sum, public knowledge of the Department of Justice's criminal investigations of former President Trump and his allies in connection with the events of January 6, 2021 and the

10

FILED UNDER SEAL

retention of classified documents has been ubiquitous. Furthermore, it is well known that the FBI has been seizing and examining the communications of those involved. These federal investigations have been repeatedly acknowledged and addressed by the former President. The government cannot credibly claim that secrecy of this Warrant is required to maintain the integrity of the investigation when more than forty former presidential aides and allies have already been served with grand jury subpoenas, senior advisors are known to have testified before the grand jury, multiple search warrants have been executed for electronic devices, two physical search warrants have been executed, including at the former President's home, and the Attorney General has held a press conference publicly confirming the criminal investigations are directed at the former President. It strains credulity to believe that the incremental disclosure of this Warrant could somehow alter the current balance of public knowledge in any meaningful way so as to cause some harm to the investigation.[4]

The government's proffered explanations for needing the Non-Disclosure Order appear to be conclusory at best. There is no reason to believe that notification of this latest search warrant in this investigation would suddenly cause former President Trump or any potential confederates

---

[4] Other investigations focusing on the former President and his associates are also publicly known and widely reported in the media, including by the Select Committee to Investigate the January 6th Attack on the United States Capitol, the Fulton County District Attorney's Office, and the Manhattan District Attorney's Office. *See* Mary Clare Jalonick et al., *Jan. 6 Panel Urges Trump Prosecution with Criminal Referral*, ASSOCIATED PRESS (Dec. 19, 2022), *available at* https://apnews.com/article/january-6-final-hearing-investigation-wraps-0bceb95826c1c836023d2810ccbeccca; Kyle Cheney, *'Decisions are Imminent': Georgia Prosecutor Nears Charging Decisions in Trump Probe*, POLITICO (Jan. 24, 2023), *available at https://www.politico.com/news/2023/01/24/decisions-are-imminent-georgia-prosecutor-nears-charging-decisions-in-trump-probe-00079283*; William Rashburn et al., *Manhattan Prosecutors Begin Presenting Trump Case to Grand Jury*, N.Y. TIMES (Jan. 30, 2023), *available at* https://www.nytimes.com/2023/01/30/nyregion/trump-stormy-daniels-grand-jury.html. The government cannot plausibly assert that these investigations in which the former President's liberty is implicated pose less of an incentive to flee, tamper, or destroy evidence than notification of the Warrant.

11

to destroy evidence, intimidate witnesses, or to flee prosecution. First and foremost, the Warrant does not provide any new information about the progress of criminal investigation and how the government is seeking evidence; if they were so inclined, former President Trump and potential confederates have had many months during which the government's investigation has been widely known to try and interfere with it. Second, the former President has announced that he is running for re-election in 2024, which renders it highly implausible that he will attempt to flee the country, and even more unlikely that such flight would be precipitated by this specific Warrant. Finally, with respect to this Warrant, Twitter has preserved communications and data from the Target Account available in its standard production tooling used to handle law enforcement process. Therefore, disclosure of the existence of the Warrant to the former President would not risk deletion of relevant communications or data preserved in its production tooling.

In sum, the government cannot meet its burden of establishing a compelling governmental interest necessary to restrain Twitter's First Amendment rights. The government's conclusory statements of investigative harm are insufficient to withstand strict scrutiny. *See John Doe, Inc. v. Mukasey*, 549 F.3d 861, 881 (2d Cir. 2008) (reviewing court cannot "uphold a nondisclosure requirement on a conclusory assurance" that a statutory standard is satisfied). Accordingly, the Non-Disclosure Order should be vacated.

**B.     Unique and Important Executive Privilege Considerations Underlie Twitter's First Amendment Interest in Notifying its User**

Twitter's First Amendment interests in being able to notify its user in this case is particularly important, where the Warrant calls for the production of, among other things, private communications sent or received personally by the then-President of the United States. No court has ever addressed the issue of executive privilege in this context —including what limitations

12

might need to be imposed on derivative use of private presidential communications.[5] Twitter itself may not have standing to raise these issues, and takes no position on the applicability of executive privilege to these communications in this circumstance. Nonetheless, the disclosure of these private presidential communications clearly affects other parties, including Twitter's user, who was President of the United States at the time the materials sought were created, and may retain the ability to assert that privilege now. *See, e.g., Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 448-49 (1977). As, the United States Supreme Court stated in *Nixon*:

> [u]nless he can give his advisers some assurance of confidentiality, a President could not expect to receive the full and frank submissions of facts and opinions upon which effective discharge of his duties depends. The confidentiality necessary to this exchange cannot be measured by the few months or years between the submission of the information and the end of the President's tenure; the privilege is not for the benefit of the President as an individual, but for the benefit of the Republic. Therefore the privilege survives the individual President's tenure.

*Id.* (*quoting* Appellee's Br. at 33). Recently, the Supreme Court declined to answer the open question of whether a former President can assert the privilege over his successor's objection, stating that "[t]he questions whether an in what circumstances a former President may obtain a court order preventing disclosure of privileged records from his tenure in office, in the face of a determination by the incumbent President to waive the privilege, are unprecedented and raise serious and substantial concerns. *Trump v. Thompson*, 142 S. Ct. 680 (2022) (Order Denying Stay of Mandate and Injunction).

These are weighty and difficult questions that courts, including the Supreme Court, have wrestled with, and should be resolved through a full adversarial process involving the real parties in interest, not through an *ex parte* secret filing. Twitter has a significant interest in being

---

[5] No court has addressed the core privilege issue in this context, and there is a separate and critical issue of derivative use of those communications. As noted in the introduction, it is in part for these reasons that execution of the Warrant should be stayed to preserve the status quo.

13

permitted to notify its user—for whom there are no credible investigative reasons to bar disclosure—of the existence of the Warrant, so that he may raise whatever concerns he has, if any, for determination by this Court in a full adversarial proceeding.

### C. The Order is Not Narrowly Tailored, as There are Less Restrictive Means Available that Would Preserve Twitter's Essential First Amendment Rights

Separately, even assuming *arguendo* that the government could make a showing of a compelling governmental interest, strict scrutiny also requires the government to prove that a non-disclosure order is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 164. Given the availability of less restrictive means however, the government cannot meet its burden.

Here, the government cannot meet this burden because the Non-Disclosure Order is a blanket prohibition preventing Twitter from notifying anyone about the Warrant and Non-Disclosure Order. Instead, this Court could modify the Non-Disclosure Order to permit Twitter to notify just its user of the Warrant. Such a modification to the Non-Disclosure Order would permit Twitter to exercise its First Amendment interest in complying with its contractual promise to its users about a law enforcement demand for communications and data.

Alternatively, if the government were concerned that even limited disclosure to the user would jeopardize its widely publicized investigations, this Court could modify the Non-Disclosure Order to authorize Twitter to notify a representative of the former President, perhaps from among the list of representatives that former President Trump officially designated as "my representatives in all respects that pertain to the records of my Presidency, and . . . each representative may exercise all authority granted to me under Chapter 22 of title 44, United

14

FILED UNDER SEAL

States Code, or any other provision of law related to the records of my Presidency."[6] The Court could even appoint a Special Master, who could consider, raise, and assert any rights or privileges, if any, on behalf of the former President.

Finally, the government has another, even less restrictive option that would not impede Twitter's First Amendment interests at all. The government could seek the data instead from the Archivist at the NARA, who, consistent with the Presidential Records Act, maintains a copy of the Target Account from the requested time period. Such action would be in compliance with the law governing presidential records passed by Congress and implemented by the Executive Branch compared to this *ex parte* process sought by the Special Counsel that is proceeding without regard to the procedures governing the Presidential Records Act.

In sum, because there are more narrowly tailored ways to craft the Non-Disclosure Order that lessen the burden on Twitter's First Amendment rights, the Non-Disclosure Order cannot stand.

**D.     Failure to Stay Twitter's Production Obligation Pending Resolution of this Motion Would Cause Irreparable Injury to Twitter's First Amendment Rights and Effectively Eliminate Any Potential Remedy for the User**

Finally, although the Warrant requires production of requested information within 10 days of issuance, this Court should stay Twitter's obligation to comply until the Non-Disclosure issue has been resolved. Were Twitter obligated to produce the requested information, it would vastly impede its ability to effect its First Amendment rights to provide meaningful notice to its

---

[6] Letter of Donald J. Trump to NARA Archivist David S. Ferriero (Jan. 19, 2021), designating "Mark R. Meadows, Pasquale A. Cipollone, John A. Eisenberg, Patrick F. Philbin, Scott F. Gast, Michael M. Purpura, and Steven A. Engel as my representatives in all respects that pertain to the records of my Presidency, and . . . each representative may exercise all authority granted to me under Chapter 22 of title 44, United States Code, or any other provision of law related to the records of my Presidency." Available at https://www.archives.gov/files/foia/wh-ltr-to-u.s.-archivist-trump-pra-rep-1.19.2021.pdf.

user. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976) *citing New York Times Co. v. United States*, 403 U.S. 713 (1971). Twitter's First Amendment interests are myriad: it wishes to engage in the speech prohibited by the Non-Disclosure Order for a variety of reasons, including both its commitment to informing its customers about legal process related to their accounts but also because in this unique instance, the user may have a strong interest in challenging the Warrant or further use of the requested data – a challenge the user cannot bring unless he is informed of the Warrant before its execution. This concern is even more heightened when the Special Counsel apparently seeks to obtain communications and data that is already at NARA and access to which is subject to the procedures set forth in the Presidential Records Act.

Acknowledging the importance of First Amendment interests and the high judicial scrutiny that attends to prior restraint on speech, the Supreme Court has been clear that the status quo should be maintained pending a final judicial determination. *Freedman v. State of Md.*, 380 U.S. 51, 59 (1965) ("Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution."); *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002) ("any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained"). Applying those principles here, the Court should stay any production obligation until the issues raised in this motion are resolved —and in the event the Non-Disclosure Order is quashed or modified and notice is permitted, for a 7 day period after such notice is given.

16

## CONCLUSION

The Non-Disclosure Order issued pursuant to 18 U.S.C. § 2705(b) is a blanket prohibition prohibiting Twitter from notifying anyone about the Warrant or Non-Disclosure Order, and cannot be justified by a compelling governmental interest. Accordingly, the Non-Disclosure Order impermissibly burdens Twitter's First Amendment rights, and must be vacated or modified to allow Twitter to notify its user of the government's demand. In addition, this Court should stay Twitter's compliance with the Warrant until resolution of these constitutional issues.

Dated: February 2, 2023

Respectfully submitted,

_____
Ari Holtzblatt, D.C. Bar 1009913
Benjamin Powell, D.C. Bar 464823 *(D.D.C. admission pending)*
Whitney Russell, D.C. Bar 987238 *(D.D.C. admission pending)*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Ari.Holtzblatt@wilmerhale.com
benjamin.powell@wilmerhale.com
Whitney.russell@wilmerhale.com
Tel: (202) 663-6000
Fax: (202) 663-6363

George Varghese *(pro hac vice forthcoming)*
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston MA 02109
George.varghese@wilmerhale.com
Tel: (617) 526-6000
Fax: (617) 526-6363

*Counsel for Twitter, Inc.*

FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of February 2023, I caused the foregoing motion to be served by first class mail and email upon:

Gregory Bernstein, Assistant Special Counsel

 

_____
Ari Holtzblatt, D.C. Bar 1009913
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Ari.Holtzblatt@wilmerhale.com
Tel: (202) 663-6000
Fax: (202) 663-6363