FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER INC. IDENTIFIED IN ATTACHMENT A | Case No. 1:23-SC-31 - BAH <br><br> **UNDER SEAL** |

## TWITTER'S MOTION FOR A STAY PENDING APPEAL

Twitter respectfully moves this Court for a stay of its March 3 order requiring Twitter to pay $350,000 in contempt fines by March 13 ("contempt order"). Twitter seeks this relief to ensure that the court of appeals retains jurisdiction over all issues that Twitter intends to raise on appeal. Twitter filed a notice of appeal on March 7 in this matter, and intends to raise three issues before the court of appeals: (1) whether the Non-Disclosure Order (NDO) should be vacated because it impermissibly infringes Twitter's First Amendment right to inform its user of legal process that might infringe the user's rights; (2) whether contempt was improper because this Court should have granted Twitter's request to delay compliance with the Warrant until after resolution of Twitter's First Amendment challenge to the NDO; and (3) whether this Court's contempt sanction was unduly punitive or otherwise improper because, among other things, Twitter substantially complied in good faith with the Warrant at all relevant times.

Unless the Court grants this motion, the court of appeals could lose appellate jurisdiction over the latter two issues once Twitter pays the $350,000 in contempt fines on March 13 and thereby purges its contempt. As this Court has recognized, "staying sanctions during an expedited appeal" is an appropriate measure to ensure that a contemnor has an opportunity to

1

FILED UNDER SEAL

"press its arguments to a court of review." *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, No. MC 18-175, 2019 WL 2182436, at *5 (D.D.C. Apr. 10, 2019) (Howell, J.), *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019); *see also In re Grand Jury Subpoena No. 7409*, 2018 WL 8334866, at *3 & n.1 (D.D.C. Oct. 5, 2018) (Howell, J.). Twitter seeks a stay for that reason and, consistent with this Court's past instruction, will request that the D.C. Circuit expedite briefing in this case. Indeed, because Twitter has already produced the materials the Government seeks, and because the fines at issue here have already accrued, this is an especially appropriate case for a stay. The stay requested would only delay payment of the fine—not prevent that fine from growing, or delay compliance with the Warrant. And Twitter makes this request only so that it may preserve its right to appeal—an appeal which Twitter will seek to pursue on an expedited basis.

Accordingly, Twitter respectfully requests that this Court stay its contempt order pending appeal. Twitter also respectfully requests that the Court rule on this motion promptly. If the Court does not grant a stay by noon on Thursday, March 9, Twitter intends to seek relief from the D.C. Circuit, so that a stay may be entered before the fine comes due on March 13. If the Court requires more time to consider this motion, Twitter respectfully asks that, in the interim, it enter an administrative stay of its contempt order during the pendency of this motion. The Government has informed counsel for Twitter that it opposes a stay.[1]

**ARGUMENT**

A court may issue a stay pending appeal in order "to preserve the jurisdiction of the United States Supreme Court and of [the D.C. Circuit] over the controversies … presented."

---

[1] Twitter presumes the Court's familiarity with the background facts and prior proceedings in this dispute, and so Twitter does not reiterate them in detail here.

FILED UNDER SEAL

*Sawyer v. U.S. Steel Co.*, 197 F.2d 582, 283 (D.C. Cir. 1952); *see* 28 U.S.C. § 1651(a) ("all courts … may issue all writs necessary or appropriate in aid of their respective jurisdictions"); *Nken v. Holder*, 556 U.S. 418, 426-427 (2009).  To determine whether to grant a stay pending appeal, the Court considers four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken*, 556 U.S. at 434 (quotation marks omitted).  Those factors support a stay here.

**I.     TWITTER WILL BE IRREPARABLY INJURED ABSENT A STAY**

A party suffers clear irreparable harm if, absent a stay pending appeal, its appeal may become moot—indeed, avoiding mootness is "[p]erhaps the most compelling justification" for a stay pending appeal.  *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers); *see also, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016); *People for the Amer. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007).

Twitter faces such a risk here.  Unless the Court's order requiring Twitter to pay the contempt sanction is stayed, Twitter will be forced to pay those sanctions in full by March 13.  But if the "contempt has been purged, the issue presented by" the appeal of the contempt order would be "moot."  *United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987); *see also In re Hunt*, 754 F.2d 1290, 1293 (5th Cir. 1985) ("Generally, the discharge of a civil contempt order by the person held in contempt moots any appeal of the contempt judgment."); *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir. 1980) (collecting cases holding that "once a civil contempt order is purged, no live case or controversy remains for adjudication").

FILED UNDER SEAL

Two of the three issues Twitter intends to raise on appeal could therefore be rendered moot next week, unless the court issues a stay. First, Twitter could lose its ability to appeal its request that its obligation to comply with the Warrant be stayed pending resolution of the dispute over the NDO. The district court's denial of that request, and Twitter's corresponding obligation to produce the records in compliance with the Warrant without awaiting resolution of its dispute over the NDO, is not itself an appealable final order. *See In re Ryan*, 538 F.2d 435, 437 (D.C. Cir. 1976) (an "order compelling … the production of documents" is "not final and hence not appealable"). Instead, the ordinary path to appealing this Court's decision requiring production prior to resolution of the NDO issue is for Twitter to appeal the "contempt judgment" that resulted from Twitter's purported "refus[al] to comply." *Id.* But if that contempt order is purged and the dispute over it mooted, Twitter could lose its vehicle for appealing this Court's underlying decision as to the proper timing of Twitter's production, and the relationship between that timing and Twitter's First Amendment rights. *C.f. Matter of Search of Kitty's E.*, 905 F.2d 1367, 1371 (10th Cir. 1990) ("[I]t is axiomatic that the timing of speech is often crucial to its impact[.]"). And, at the same time, Twitter could permanently lose one of the grounds on which it can contest the contempt sanction, the validity of which is premised on the validity of the underlying production order. Twitter thus risks an irreparable loss of $350,000 dollars, on top of losing the ability to air its arguments on appeal.[2]

---

[2] If Twitter is denied a stay, it will argue on appeal that the mootness exception for issues capable of repetition yet evading review permits the court of appeals to nonetheless exercise jurisdiction over the contempt order and the underlying production order. But there is no guarantee that the court of appeals will agree that the exception applies. Twitter may also be able to persuade the D.C. Circuit that, regardless of whether this Court's contempt determination has become moot, the decision refusing to delay compliance with the Warrant may be reviewed on appeal as an order merging into the court's final judgment regarding the contempt order. *See I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986) ("In general, … when an interlocutory order is not appealable and so merges into the final

FILED UNDER SEAL

Twitter's appeal of its good faith defense could also become moot if it is required to pay the contempt sanction now, again irreparably depriving it of an important ground for contesting this Court's $350,000 sanction. Preserving the status quo by extending the period for Twitter to pay the contempt sanction and purge contempt will avoid that risk entirely.[3]

## II. NEITHER THE GOVERNMENT NOR THE PUBLIC INTEREST WILL BE HARMED BY A STAY

Other than preserving Twitter's ability to appeal, staying the Court's order will have only a single effect: a temporary delay in the Clerk of Court's receipt of Twitter's payment. Because that money is due to the Court—not the Government—that delay will not harm the opposing party. And because Twitter has now complied with the Warrant, there is no risk that delaying Twitter's payment will have any effect on the Government's investigation. That establishes that both "the harm to the opposing party" and "the public interest" counsel in favor of a stay, because those factors "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435.

Nor is a temporary delay in the Court's receipt of $350,000 a harm to the public interest in its own right. *C.f. Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparably injury."). If the public interest is implicated at all here, it counsels in favor of a stay so that the court of appeals may conclusively determine important legal issues—like the proper manner of resolving

---

judgment, it *is* open to review on appeal from that judgment."). But there is a risk that the D.C. Circuit could reject that basis for jurisdiction over a once-live contempt controversy. By contrast, if Twitter's obligation to pay the contempt sanction and thereby purge its contempt is stayed, the appellate court's jurisdiction will stand on firm ground.

[3] If Twitter is denied a stay, it will argue on appeal that its appeal of this Court's rejection of its good faith defense is not moot because that ruling still casts doubt on the propriety of the Court's sanction, or that the decision may be reviewed on appeal as an order merging into the court's final judgment regarding the contempt order.

FILED UNDER SEAL

interconnected production orders and NDOs and the nature and scope of the good faith defense to contempt—that will otherwise be subject to continuing uncertainty and litigation. *C.f. United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (there is a "public interest in having the legality of [challenged] practices settled").

### III.   LIKELIHOOD OF SUCCESS

To demonstrate a likelihood of success on the merits, Twitter need only "raise[] serious legal questions going to the merits,'" i.e., questions that are "'a fair ground of litigation.'" *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). This standard governs even though this Court has already "set[] forth" its contrary "views of the law" on the issues being appealed. *Judicial Watch, Inc. v. United States Secret Service*, 2011 WL 13377578, at *1 (D.D.C. Nov. 14, 2011) (Howell, J.).

Here, both issues that may be rendered moot in the absence of a stay—the propriety of the Court's decision to compel compliance before resolving Twitter's challenge to the NDO, and the appropriateness of the Court's sanction—present serious, substantial questions justifying interim relief, notwithstanding the Court's evident disagreement on how to resolve those questions.

#### A.   Twitter Has a Serious and Substantial Argument That the Court Erred by Refusing to Delay Compliance With the Warrant Pending Resolution of Twitter's First Amendment Challenge

Twitter has a serious and substantial basis for appealing this Court's refusal to delay compliance with the Warrant pending resolution of Twitter's First Amendment challenge to the NDO. The Court's decision to compel production of the user's account information—the decision which provided the basis for holding Twitter in contempt—before permitting Twitter to communicate the Warrant's existence to the user impermissibly interfered with Twitter's First

6

FILED UNDER SEAL

Amendment rights. "It is axiomatic that the timing of speech is often crucial to its impact." *Matter of Search of Kitty's E.*, 905 F.2d at 1371; *see also N.Y. Progress and Protection PAC v. Walsh*, 733 F.3d 483, 489 (2d Cir. 2013) ("We ought not to be determining what speech is pressing and what can suffer the law's delay. That, like deciding what speech is important and what unimportant, is not for the courts."). By compelling Twitter to produce a user's account information while the NDO remained in effect, the Court permanently deprived Twitter of the opportunity to speak "at the moment when" its speech was "most needed." *Wood v. Ga.*, 370 U.S. 375, 392 (1962). That is particularly relevant where, as here, the relevant user (Mr. Trump) may have available rights and privileges not available to the public. Here, Twitter's speech was most needed *before* it handed over Mr. Trump's account information because there is at least a colorable argument that executive privilege applies in this case, and that the privilege is irreparably violated upon disclosure of protected communications. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449-455 (1977) (recognizing presence of executive privilege over confidential presidential communications with respect to Archivist but concluding that Archivist's "intrusion" was permissible); *Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997) (discussing same and noting, "*Nixon* cases establish the contours of the presidential communications privilege"). And Mr. Trump is plainly interested in asserting such a privilege—just this week, he did so with respect to impending grand jury testimony by former Vice President Mike Pence.[4]

On appeal, Twitter will argue that this Court's decision to nonetheless order production before resolving the dispute over the NDO impermissibly deprived Twitter of an opportunity to

---

[4] M. Haberman, *Trump Asks Judge to Block Pence's Testimony to Grand Jury*, N.Y. Times, Mar. 4, 2023, available at https://www.nytimes.com/2023/03/04/us/politics/trump-pence-executive-privilege.html.

FILED UNDER SEAL

effectively vindicate its time-sensitive First Amendment interest. At a minimum, the Court should have adjudicated those questions simultaneously, or deferred production until it had resolved the First Amendment issue—especially because Twitter had proposed a schedule that would have permitted the court to resolve both issues within 48 hours of the schedule that the court ultimately adopted. *See* Email from Gregory Bernstein, Assistant Special Counsel, to Chambers of Judge Beryl A. Howell (Feb. 3, 2023, 11:58 EST). In other circumstances involving potentially privileged materials, courts have permitted pre-execution challenges to protect an individual's privilege. *See, e.g.*, *In re Sealed Search Warrant and Application*, 11 F.4th 1235, 1247 (11th Cir. 2021) ("The whole point of privilege is privacy. … Once the government improperly reviews privileged materials, the damage … is definitive and complete."); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 183 (4th Cir. 2019) (reversing district court's denial of injunction on federal agents reviewing seized privileged materials obtained through execution of a search warrant); *Klitzman Klitzman & Gallagher v. Krut*, 744 F.2d 955, 962 (3d Cir. 1984) (granting defendant's motion to return privileged material seized during execution of search warrant); *United States v. Vepuri*, 585 F. Supp. 3d 760, 762 (E.D. Pa. 2021) (noting that defendant opposed government's use of a filter team and sought return of records). But this Court's decision to compel execution before even addressing Twitter's challenge to the NDO foreclosed any possibility that such a privilege challenge could be aired at the proper time. *Cf. In re Trump*, 781 F. App'x 1, 2 (D.C. Cir. 2019) ("district court abused its discretion" by failing to "adequately address" whether it was "preferable" to "resolv[e] … legal questions" implicating "separation of powers issues" before proceeding with discovery). Accordingly, there is at least a fair ground for litigation over whether this Court's enforcement of the Warrant—and corresponding finding of contempt—was erroneous.

8

FILED UNDER SEAL

That is especially so because Twitter had (and has) a serious and substantial basis for challenging the NDO—and for arguing on appeal that the Court erred in concluding otherwise. As this Court held, Twitter has a First Amendment interest in informing its user of the Warrant, and the NDO operates as a prior restraint on that speech. Doc. 30 at 15-16. The Constitution thus permits the NDO only if the Government shows that the NDO is narrowly tailored to serve a compelling government interest. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015). And, as Twitter has explained, the Government cannot do so because disclosure of the NDO would add no meaningful information to the public's knowledge regarding the Government's search of electronic communications in connection with its investigations of the former President. Contrary to this Court's conclusion, the public is aware not just of the "general contours of the government's investigation," Doc. 30 at 21-22, but also that the investigations target Mr. Trump and a wide range of his associates; that the investigations focus on, among other things, Mr. Trump's involvement in the events of January 6; that the Government has seized electronic communications of Mr. Trump's associates, including those who communicated directly with Mr. Trump; and that the investigations encompass Mr. Trump's personal communications, including those stored electronically, *see* Reply in Support of Mot. to Quash or Vacate at 4, 10. Any reasonable observer would expect the Special Counsel to obtain a Warrant seeking Mr. Trump's electronic communications, including communications made through Twitter. *See id.* at 2. Disclosing the Warrant, then, can reveal nothing of significance about the Government's investigations, and thus would not jeopardize those investigations in any serious way.

### B. Twitter Has a Serious and Substantial Argument That the Court Erred in Rejecting its Good Faith Defense

Twitter also has a serious and substantial basis for challenging the Court's rejection of its defense that it substantially complied with the warrant in good faith before the deadline. In

9

FILED UNDER SEAL

rejecting that defense, the Court engaged in an impermissibly backward-looking analysis to justify what, by law, must be a purely remedial—and thus forward-looking—sanction. Civil contempt sanctions must "exert a constant coercive pressure," and may not be "imposed retrospective[ly] for a 'completed act of disobedience,' such that the contemnor cannot avoid or abbreviate the [sentence] through later compliance." *Int. Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828-829 (1994).

As a result, in exacting a contempt penalty, "not only must the District Court consider whether there is indeed a contempt but also whether if so, it be of such magnitude as to warrant retention, in part or to any extent, of the coercive fine originally provided for in contemplation of an outright refusal to obey." *Bhd. of Locomotive Firemen & Enginemen v. Bangor & A. R. Co.*, 380 F.2d 570, 582 (D.C. Cir. 1967). Answering that question involves "consideration of the complexity of the outstanding order, possible ambiguities, the difficulties in arranging compliance and the extent of efforts to obey its terms." *Id.* The focus of an inquiry into a contemnor's "compliance efforts" should not be on "events that occurred before the fine started to accrue." *Washington Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat. Cap. Loc. Div. 689*, 531 F.2d 617, 621 (D.C. Cir. 1976).

But the Court's March 3 decision hinges on exactly such past events. The decision discounts Twitter's diligent efforts from February 7 onward because those measures "occurred only *after* it had already delayed production since January 27." Doc. 30 at 32. It rejects Twitter's good faith defense for that reason and because "[i]f Twitter had been diligent and serious in its good faith intention to comply with the Warrant, … questions" about the Warrant's scope and Twitter's capacity to comply with it "should have been identified, raised, and resolved with the government upon receipt of the Warrant on January 19, 2023." Doc. 30 at 32; *see also*

Doc. 30 at 33 ("Twitter's good faith and substantial [compliance] defense fails because it did not attempt to resolve specific questions concerning the Warrant's document demands with the government prior to either the February 7 or February 9, 2023, hearings.").

Putting aside Twitter's strong disagreement with the Court's and the Government's characterization of Twitter's efforts to confer with the Government leading up to February 7, that history cannot, as a matter of law, form the basis for exacting the threatened contempt sanction or for rejecting Twitter's good faith defense. As the Court itself noted, it was "clear" that Twitter was "working hard to" comply with the Warrant requests between the hearing on February 7 and February 9. Sealed Hr'g Tr. (Feb. 9, 2023) at 49. At that point—once Twitter was already substantially complying, in good faith, with the Warrant—monetary sanctions could serve no further remedial function. Yet the Court nonetheless imposed hefty sanctions during that period and rejected Twitter's good faith defense. The Court's sanction order therefore served to punish Twitter, rather than to exclusively "obtain [its] compliance with" the Warrant. *Food Lion, Inc. v. UFCW Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997). On appeal, Twitter will argue that this was error—presenting a serious and substantial issue for the D.C. Circuit to resolve.

## CONCLUSION

Twitter respectfully requests that, pending appeal, this Court stay its March 3 order compelling Twitter's payment of $350,000 in contempt fines. Twitter also asks that, if the Court requires additional time to consider this motion, it enter an administrative stay of that order.

FILED UNDER SEAL

Dated: March 7, 2023

Respectfully submitted,

*[signature]*

Ari Holtzblatt, D.C. Bar 1009913
Benjamin Powell, D.C. Bar 464823
Whitney Russell, D.C. Bar 987238
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Ari.Holtzblatt@wilmerhale.com
Benjamin.Powell@wilmerhale.com
Whitney.Russell@wilmerhale.com
Tel: (202) 663-6000
Fax: (202) 663-6363

George P. Varghese *(pro hac vice)*
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston MA 02109
George.Varghese@wilmerhale.com
Tel: (617) 526-6000
Fax: (617) 526-6363

*Counsel for Twitter, Inc.*

FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March 2023, I caused the foregoing to be served by email upon:

James Pearce, Assistant Special Counsel

Ari Holtzblatt, D.C. Bar 1009913
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363