APPEAL,SC2,SCA–DNOT,SCA–SW,Sealed_Case

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:23–sc–00031–BAH</u> *SEALED*

IN THE MATTER OF THE SEARCH OF INFORMATION
THAT IS STORED AT PREMISES CONTROLLED BY
TWITTER INC. IDENTIFIED IN ATTACHMENT A
Assigned to: Chief Judge Beryl A. Howell
Cause: Civil Miscellaneous Case

Date Filed: 01/05/2023
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: U.S. Government Plaintiff

**<u>In Re</u>**

**IN THE MATTER OF THE SEARCH
OF INFORMATION THAT IS
STORED AT PREMISES
CONTROLLED BY TWITTER INC.
IDENTIFIED IN ATTACHMENT A**

**<u>Interested Party</u>**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | represented by | **Gregory Douglas Bernstein**<br>USAO<br>312 North Spring Street, 12th Floor<br>United States Attorney's Office<br>Central District of California<br>Los Angeles, CA 90012<br>213–894–3183<br>Email: <u>gregory.bernstein@usdoj.gov</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **James Pearce**<br>U.S. DEPARTMENT OF JUSTICE<br>CRIMINAL DIVISION APPELLATE<br>SECTION<br>Department of Justice, Criminal Division<br>950 Pennsylvania Ave NW<br>Suite 1250<br>Washington, DC 20530<br>(202) 532–4991<br>Fax: (202) 305–2121<br>Email: <u>james.pearce@usdoj.gov</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Mary Lyle Dohrmann**<br>U.S. ATTORNEY'S OFFICE FOR THE<br>DISTRICT OF COLUMBIA<br>555 4th St, NW<br>Washington, DC 20530<br>(202) 252–7035 |

Email: mary.dohrmann@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Windom**
555 Fourth Street NW
Washington, DC 20530
202–252–7846
Email: thomas.windom@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Interested Party**

**TWITTER INC.**                    represented by  **Aaron Zebley**
WILMER CUTLER PICKERING HALE
& DORR
2100 Pennsylvania Avenue NW
Washington, DC 20037
202–663–6808
Email: aaron.zebley@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ari Holtzblatt**
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
202–663–6964
Email: ari.holtzblatt@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**George P. Varghese**
WILMERHALE LLP
60 State Street
Boston, MA 02109
617–526–6524
Email: george.varghese@wilmerhale.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Whitney D. Russell**
2100 Pennsylvania Avenue NW
Washington, DC 20037
202–663–6510
Email: whitney.russell@wilmerhale.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/2023 | 1 | APPLICATION for Search/Seizure Warrant by USA pursuant to 18 U.S.C. 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) filed by UNITED STATES OF AMERICA.(zstd) (Entered: 01/17/2023) |
| 01/17/2023 | 2 | APPLICATION for Order pursuant to 18 U.S.C. 2705(b) filed by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(zstd) (Entered: 01/17/2023) |
| 01/17/2023 | 3 | ORDER granting 2 Application for an Order pursuant to 18 USC 2705(b) as to TWITTER, INC. Signed by Chief Judge Beryl A. Howell on January 17, 2023. Counsel has been notified electronically.(lcbah3) (Entered: 01/17/2023) |
| 01/17/2023 | 4 | Search and Seizure Warrant Issued by Chief Judge Beryl A. Howell on 1/17/2023. Signed by Chief Judge Beryl A. Howell on January 17, 2023. Counsel has been notified electronically. (lcbah3) (Entered: 01/17/2023) |
| 02/02/2023 | 5 | MOTION for Order to Show Cause by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(zstd) (Entered: 02/02/2023) |
| 02/02/2023 | 6 | MOTION to Seal Case by TWITTER INC. (Attachments: # 1 Text of Proposed Order) (zhsj) (Entered: 02/02/2023) |
| 02/02/2023 | 7 | MOTION to Vacate or Modify Non–Disclosure Order and Stay Twitter's Compliance with Search Warrant by TWITTER INC. (Attachments: # 1 Memorandum of Points and Authorities in Support of Motion to Vacate or Modify Non–Disclosure Order Issued Pursuant to 18 U.S.C. 2705(b) And Stay Twitter's Compliance with Search Warrant, # 2 Text of Proposed Order) (zhsj) (Entered: 02/02/2023) |
| 02/02/2023 | | MINUTE ORDER (paperless) GRANTING Twitter, Inc.'s unopposed 6 Motion to Seal; and DIRECTING the government and Twitter, Inc. to confer and propose, by February 3, 2023 at 1 PM, a briefing schedule for the pending 5 governments Motion for an Order to Show Cause and 7 Twitter, Inc.'s Motion to Vacate or Modify Non–Disclosure Order, as well as a date for hearing on these pending motions. Signed by Chief Judge Beryl A. Howell on February 2, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/02/2023) |
| 02/03/2023 | | Set/Reset Deadlines: Response to Order of the Court due by 1:00 PM on 2/3/2023. (ztg) (Entered: 02/03/2023) |
| 02/03/2023 | 8 | NOTICE of Proposed Briefing Schedule in Response to Court's Order dated February 2, 2023, by UNITED STATES OF AMERICA, TWITTER INC. (ztg) (Entered: 02/03/2023) |
| 02/03/2023 | | MINUTE ORDER (paperless) Upon consideration of the parties' proposed briefing schedules submitted by email by the government, *see* 8 NOTICE of Proposed Briefing Schedule, ISSUING the following SCHEDULING ORDER regarding the government's 5 Motion for Order to Show Cause: <br><br> (1) By February 6, 2023 at 10:00 AM, Twitter, Inc. shall file any opposition to the government's motion; <br> (2) By February 6, 2023 at 6:00 PM, the government shall file any reply; <br> (3) On February 7, 2023 at 1:30 PM, the parties are DIRECTED to appear in–person in Courtroom 22A for a sealed hearing on the government's motion; and |

| | | |
|---|---|---|
| | | ISSUING the following SCHEDULING ORDER regarding Twitter, Inc.'s <u>7</u> Motion to Vacate or Modify Non–Disclosure Order:<br><br>(1) By February 16, 2023 at 4:00 PM, the government shall file any opposition to Twitter, Inc.'s motion;<br>(2) By February 23, 2023 at 4:00 PM, Twitter, Inc. shall file any reply; and<br>(3) A hearing, if necessary, will be scheduled at a later date.<br><br>Signed by Chief Judge Beryl A. Howell on February 3, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/03/2023) |
| 02/03/2023 | | Set/Reset Deadlines/Hearings: Twitter, Inc.'s opposition to the government's motion due by 10:00 AM on 2/6/2023; government's reply due by 6:00 PM on 2/6/2023; Sealed Motion Hearing scheduled for 2/7/2023, at 1:30 PM in Courtroom 22A– In Person before Chief Judge Beryl A. Howell. Government's opposition to Twitter, Inc.'s motion due by 4:00 PM on 2/16/2023; Twitter Inc.'s reply due by 4:00 PM on 2/23/2023. (ztg) (Entered: 02/03/2023) |
| 02/06/2023 | <u>9</u> | Memorandum in opposition to re <u>5</u> Motion for Order to Show Cause filed by TWITTER INC.. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B)(zstd) (Entered: 02/06/2023) |
| 02/06/2023 | <u>10</u> | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– George P. Varghese, by TWITTER INC.. (Attachments: # <u>1</u> Text of Proposed Order, # <u>2</u> Varghese PHV Declaration, # <u>3</u> Varghese – Certificate of Good Standing)(zstd) (Entered: 02/06/2023) |
| 02/06/2023 | | Filing fee received: $ 100.00, receipt number: 203958 re <u>10</u> Motion for Leave to Appear Pro Hac Vice (zstd) (Entered: 02/06/2023) |
| 02/06/2023 | | MINUTE ORDER (paperless) GRANTING Twitter, Inc.'s <u>10</u> Motion for Admission Pro Hac Vice. Mr. Varghese may enter an appearance pro hac vice for the purpose of representing Twitter, Inc. in this action. Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). <u>Click for instructions</u>. Signed by Chief Judge Beryl A. Howell on February 6, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/06/2023) |
| 02/06/2023 | <u>11</u> | REPLY to opposition to motion re <u>5</u> MOTION for Order to Show Cause filed by UNITED STATES OF AMERICA. (zstd) (Entered: 02/07/2023) |
| 02/07/2023 | <u>12</u> | NOTICE of Appearance by George P. Varghese on behalf of TWITTER INC. (zstd) (Entered: 02/07/2023) |
| 02/07/2023 | | Minute Entry for proceedings held before Chief Judge Beryl A. Howell: Motion Hearing held on 2/7/2023. <u>5</u> MOTION for Order to Show Cause filed by UNITED STATES OF AMERICA, heard and GRANTED; an order will be issued by the Court. (Court Reporter Elizabeth Saint–Loth.) (ztg) (Entered: 02/07/2023) |
| 02/07/2023 | | MINUTE ORDER (paperless) GRANTING the government's <u>5</u> Motion for Order to Show Cause; DIRECTING that Twitter, Inc.: (1) By February 7, 2023 at 5:00 PM, comply with the <u>4</u> Search and Seizure Warrant, which itself required compliance by January 27, 2023; and (2) by February 8, 2023 at 5 PM, submit a list of each case in which Twitter, Inc. has filed a challenge to a non–disclosure order, issued pursuant to 18 U.S.C. § 2705(b), summarizing for each case the court's resolution of that challenge; and further ORDERING that Twitter, Inc. shall be held in contempt if it fails to comply with the <u>4</u> Search and Seizure Warrant by February 7, 2023 at 5:00 PM, and that |

| | | |
|---|---|---|
| | | Twitter, Inc. shall be fined $50,000, a fine amount that shall double every day, for failing to comply with this Order, payable to the Clerk of this Court. Signed by Chief Judge Beryl A. Howell on February 7, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/07/2023) |
| 02/08/2023 | 13 | MOTION to Partially Unseal for Purpose of Ordering Transcript by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(zstd) (Entered: 02/08/2023) |
| 02/08/2023 | | MINUTE ORDER (paperless) GRANTING the government's 13 Motion to Partially Unseal for Purpose of Ordering Transcript and AUTHORIZING the Court Reporter to provide the February 7, 2023, sealed hearing transcript to counsel of record for the government. Signed by Chief Judge Beryl A. Howell on February 8, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/08/2023) |
| 02/09/2023 | | MINUTE ORDER (paperless) DIRECTING, upon notice from government counsel, via email, that Twitter, Inc. has advised the government that records responsive to the 4 Search and Seizure Warrant have not been fully produced by the deadline for compliance set out in the Court's February 7, 2023 Minute Order, that the parties appear in−person, on February 9, 2023 (today) at 11:00 AM, in Courtroom 22A for a hearing on the status of Twitter, Inc.'s compliance with the Warrant. Signed by Chief Judge Beryl A. Howell on February 9, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/09/2023) |
| 02/09/2023 | 14 | Letter from Twitter, Inc Counsel. "Leave to file GRANTED". Signed by Chief Judge Beryl A. Howell on 2/9/2023. (zstd) (Entered: 02/09/2023) |
| 02/09/2023 | | Minute Entry for proceedings held before Chief Judge Beryl A. Howell: Status Conference held on 2/9/2023. (Court Reporter Elizabeth Saint−Loth.) (ztg) (Entered: 02/09/2023) |
| 02/09/2023 | 15 | MOTION Requesting Authorization for Transcription and Distribution re Motion Hearing, by TWITTER INC.. (Attachments: # 1 Text of Proposed Order Regarding February 7, 2023 Proceedings)(zstd) (Entered: 02/10/2023) |
| 02/09/2023 | 16 | MOTION Requesting Authorization for Transcription and Distribution re Status Conference by TWITTER INC.. (Attachments: # 1 Text of Proposed Order Regarding February 9, 2023 Proceedings)(zstd) (Entered: 02/10/2023) |
| 02/09/2023 | 25 | NOTICE by UNITED STATES OF AMERICA regarding Twitter's non−compliance with the warrant. (ztg) (Entered: 02/21/2023) |
| 02/09/2023 | 28 | NOTICE of Appearance by Aaron Zebley on behalf of TWITTER INC. (zstd) (Entered: 02/27/2023) |
| 02/10/2023 | 17 | MOTION to Partially Unseal for Purpose of Ordering Transcript by UNITED STATES OF AMERICA. (Attachments: # 1 Text of Proposed Order)(zstd) (Entered: 02/10/2023) |
| 02/10/2023 | | MINUTE ORDER (paperless) GRANTING Twitter, Inc.'s 15 Motion Requesting Authorization for Transcription and Distribution regarding Motion Hearing and 16 Motion Requesting Authorization for Transcription and Distribution regarding Status Conference, and AUTHORIZING the Court Reporter to provide the February 7, 2023, and February 9, 2023, sealed hearing transcripts to counsel of record for Twitter, Inc. Signed by Chief Judge Beryl A. Howell on February 10, 2023. Counsel has been notified electronically. (lcbah4) (Entered: 02/10/2023) |

| 02/10/2023 | | MINUTE ORDER (paperless) GRANTING the government's 17 Motion to Partially Unseal for Purpose of Ordering Transcript and AUTHORIZING the Court Reporter to provide the February 9, 2023, sealed hearing transcript to counsel of record for the government. Signed by Chief Judge Beryl A. Howell on February 10, 2023. Counsel has been notified electronically. (lcbah4) (Entered: 02/10/2023) |
|---|---|---|
| 02/13/2023 | 18 | NOTICE Regarding Applicability of Sanctions by TWITTER INC. (zstd) (Entered: 02/14/2023) |
| 02/13/2023 | 19 | NOTICE Regarding Accrued Sanction by UNITED STATES OF AMERICA (zstd) (Entered: 02/14/2023) |
| 02/16/2023 | 20 | MOTION to Seal and to Authorize Limited Disclosure by UNITED STATES OF AMERICA. (Attachments: # 1 Order Authorizing Limited Disclosure and Imposing Protection)(zstd) (Entered: 02/17/2023) |
| 02/16/2023 | 21 | Memorandum in opposition to re 7 Motion to Vacate or Modify Non–Disclosure Order and Stay Twitter's Compliance with Search Warrant filed by UNITED STATES OF AMERICA. (Attachments: # 1 Exhibit A)(zstd) (Entered: 02/17/2023) |
| 02/17/2023 | 23 | MOTION for Leave to Late–File the Government's Opposition to Twitter's Motion to Vacate or Modify the NDO by UNITED STATES OF AMERICA. (zstd) (Entered: 02/17/2023) |
| 02/17/2023 | 24 | ORDER Authorizing limited disclosure and imposing protection. See order for further details. Signed by Chief Judge Beryl A. Howell on February 17, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/17/2023) |
| 02/17/2023 | | MINUTE ORDER (paperless) granting the government's 23 Motion for Leave to File to Late–File. Signed by Chief Judge Beryl A. Howell on February 17, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/17/2023) |
| 02/21/2023 | 26 | MOTION for Extension of Time to File Response/Reply as to 7 MOTION to Vacate or Modify Non–Disclosure Order by TWITTER INC.. (Attachments: # 1 Text of Proposed Order)(zstd) (Entered: 02/21/2023) |
| 02/21/2023 | | MINUTE ORDER (paperless) GRANTING Twitter, Inc.'s 26 Motion for Extension of Time to File Reply, and DIRECTING Twitter, Inc. to file any reply in support of its 7 Motion to Vacate or Modify Non–Disclosure Order by February 24, 2023, at 4:00 PM. Signed by Chief Judge Beryl A. Howell on February 21, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 02/21/2023) |
| 02/24/2023 | 27 | REPLY to opposition to motion re 7 MOTION to Vacate MOTION or Modify Non–Disclosure Order and Stay Twitter's Compliance with Search Warrant filed by TWITTER INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(zstd) (Entered: 02/24/2023) |
| 03/03/2023 | 29 | ORDER denying Twitter's 7 Motion to Vacate or Modify Non–Disclosure Order and Stay Twitter's Compliance with Search Warrant, and DIRECTING Twitter to pay sanctions for its failure to comply with the Court's February 7, 2023 Minute Order. See Order for for further details. Signed by Chief Judge Beryl A. Howell on March 3, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 03/03/2023) |
| 03/03/2023 | 30 | MEMORANDUM OPINION regarding the Court's 29 Order. Signed by Chief Judge Beryl A. Howell on March 3, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 03/03/2023) |

| 03/03/2023 |    | MINUTE ORDER (paperless), upon consideration of the government's <u>31</u> proposed redactions to protect the confidentiality of information in an ongoing criminal investigation, DIRECTING, by 5 PM today, that the government file on the sealed docket a redacted version of <u>30</u> Memorandum Opinion, as proposed by the government, and transmit the redacted version promptly to counsel for Twitter, Inc. Signed by Chief Judge Beryl A. Howell on March 3, 2023. Signed by Chief Judge Beryl A. Howell on March 3, 2023. Counsel has been notified electronically.(lcbah4) (Entered: 03/03/2023) |
|------------|----|-------|
| 03/03/2023 | <u>32</u> | NOTICE OF FILING REDACTED DOCUMENT re <u>30</u> Memorandum & Opinion by UNITED STATES OF AMERICA (Attachments: # <u>1</u> Redacted Memorandum Opinion)(zstd) (Entered: 03/03/2023) |
| 03/07/2023 | <u>33</u> | NOTICE OF APPEAL TO DC CIRCUIT COURT as to <u>30</u> Memorandum & Opinion, <u>29</u> Order on Motion to Vacate,, Order on Motion to Modify, by TWITTER INC.. Filing fee $ 505, receipt number 204148. Fee Status: Fee Paid. Parties have been notified. (Attachments: # <u>1</u> Exhibit A– Order, # <u>2</u> Exhibit B– Memorandum Opinion)(zstd) (Entered: 03/07/2023) |
|            |    | *Main Document* |
|            |    | Attachment # 1 *Exhibit A– Order* |
|            |    | Attachment # 2 *Exhibit B– Memorandum Opinion* |
| 03/07/2023 | <u>34</u> | MOTION for Stay Pending Appeal by TWITTER INC.. (zstd) (Entered: 03/07/2023) |

FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER INC. IDENTIFIED IN ATTACHMENT A | Case No. 1:23-SC-31 - BAH  **UNDER SEAL** |

## NOTICE OF APPEAL

Notice is hereby given this 7th day of March, 2023, that Twitter, Inc. hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the opinion and judgment of this Court entered on the 3rd day of March, 2023, in favor of the United States of America, against Twitter (Dkts. 29-30), and all prior orders and opinions in the above-captioned case, including the January 3d Non-Disclosure Order (Dkt. 3), the February 3 scheduling order, the February 7 minute order regarding contempt, the oral orders delivered during the February 7 hearing, and the oral orders delivered during the February 9 hearing.

Dated: March 7th, 2023

Respectfully submitted,

Ari Holtzblatt, D.C. Bar 1009913
Benjamin Powell, D.C. Bar 464823 (*D.D.C. admission pending*)
Whitney Russell, D.C. Bar 987238
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Ari.Holtzblatt@wilmerhale.com
benjamin.powell@wilmerhale.com
Whitney.russell@wilmerhale.com
Tel: (202) 663-6000
Fax: (202) 663-6363

1

FILED UNDER SEAL

George P. Varghese *(pro hac vice)*
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston MA 02109
George.varghese@wilmerhale.com
Tel:  (617) 526-6000
Fax:  (617) 526-6363


*Counsel for Twitter, Inc.*

FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March 2023, I caused the foregoing to be served

by email upon:

James Pearce, Assistant Special Counsel

Ari Holtzblatt, D.C. Bar 1009913
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Tel:  (202) 663-6000
Fax:  (202) 663-6363

3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No. 1:23-SC-31 - BAH |
| INFORMATION THAT IS STORED AT | **UNDER SEAL** |
| PREMISES CONTROLLED BY TWITTER | |
| INC. IDENTIFIED IN ATTACHMENT A | |

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER INC. IDENTIFIED IN ATTACHMENT A | Case No. 23-SC-31 <br><br> **<u>Under Seal</u>** <br><br> Chief Judge Beryl A. Howell |

## <u>ORDER</u>

Upon consideration of Twitter, Inc.'s ("Twitter") motion to modify or vacate the non-disclosure order in this matter; the government's sealed and *ex parte* oppositions; the government's notice for accrued sanctions; Twitter's notice regarding the applicability of sanctions; the exhibits attached thereto; and the underlying record, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby:

**ORDERED** that Twitter's Motion to Vacate or Modify the Non-Disclosure Order and Stay Twitter's Compliance with the Search Warrant, ECF No. 7, is **DENIED**; it is further

**ORDERED** that the Non-Disclosure Order, ECF No. 3, shall remain in effect until, at least, July 16, 2023; it is further

**ORDERED** that the government submit to the Court, by March 3, 2023, at 2:00 P.M, any proposed redactions to the accompanying Memorandum Opinion that are necessary before disclosure of the Opinion to Twitter and its counsel; it is further

**ORDERED** that the parties shall submit a joint status report by March 10, 2023 at noon, advising the Court whether this Order and the Opinion may be unsealed, in whole or in part with redactions; it is further

**ORDERED** that Twitter is held in civil contempt for failing to comply with the Court's February 7, 2023, Minute Order, which ordered that Twitter would be held in contempt if it did not comply with the Search and Seizure Warrant, ECF No. 1, by 5:00 PM that day, and that Twitter

"shall be fined $50,000, a fine amount that shall double every day, for failing to comply[;]" it is further

**ORDERED** that Twitter is assessed a $350,000 sanction for failing to comply with the February 7, 2023 Minute Order, which sanction is promptly payable to the Clerk of this Court no later than March 13, 2023.

**SO ORDERED.**

Date:  March 3, 2023

*This is a final and appealable order.*

_____
BERYL A. HOWELL
Chief Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN THE MATTER OF THE SEARCH OF:

INFORMATION THAT IS STORED AT

PREMISES CONTROLLED BY TWITTER

INC. IDENTIFIED IN ATTACHMENT A

Case No. 1:23-SC-31 - BAH

**UNDER SEAL**

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>INFORMATION THAT IS STORED AT<br>PREMISES CONTROLLED BY TWITTER<br>INC. IDENTIFIED IN ATTACHMENT A | Case No. 23-SC-31<br><br>**Under Seal and**<br>**Ex Parte to Government**<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM OPINION**

For what appears to be the first time in their nearly seventeen-year existence as a company, *see generally* Letter from Counsel for Twitter, Inc. (SEALED), ECF No. 14, Twitter Inc. ("Twitter") seeks to vacate or modify an order, issued under the Stored Communications Act of 1986 ("SCA"), 18 U.S.C. § 2701 *et seq.*, commanding that the company not disclose the existence of a search warrant for a user's Twitter account, and further seeks to condition any compliance by the company with that search warrant on the user (or user's representatives) first being notified about the warrant and given an opportunity to stop or otherwise intervene in execution of the warrant.  *See* Twitter's Mot. to Vacate or Mod. NDO and Stay Twitter's Compl. with Warrant ("Twitter's Motion") (SEALED), ECF No. 7; *see also* Twitter's Mem. Supp. Twitter Mot. ("Twitter Mem.") (SEALED), ECF No. 7-1.  This is an extraordinary request. Twitter denies that this action is being taken by the company due to the identity of the targeted Twitter account ("Target Account") or its user, suggesting instead that Twitter regularly engages in challenging SCA nondisclosure orders ("NDOs")—though concededly never before regarding a covert search warrant—and assuring the Court that the fact that the user of the Target Account ("the User") is a high-profile public figure is merely coincidence.  *See* Feb. 7, 2023 Hrg. Tr. at 60:9-22 (SEALED)

1

(Twitter's counsel declaiming that the company "has no interest other than litigating its constitutional rights").[1]

Twitter justifies initiating this dispute on grounds that the NDO violates the First Amendment as a content-based prior restraint on speech the company wants to have with a customer that fails to satisfy the exacting requirements of strict scrutiny. Twitter Mem. at 2. Specifically, Twitter is not satisfied with the government's proffered reasons for nondisclosure, based upon what the company has read in media reports, *id.*, notwithstanding that both the warrant and the NDO were issued by this Court after being apprised of extensive reasons sufficient to establish probable cause for issuance of the warrant and to meet the statutory requirements for an NDO, to which reasons Twitter is neither privy nor entitled to be privy. The government opposes Twitter's motion, arguing that disclosure of the warrant's existence would result in statutorily cognizable harms, under 18 U.S.C. § 2705(b), *see* Gov't's *Ex Parte* Opp'n to Twitter's Mot. at 1 ("Gov't's *Ex Parte* Opp'n") (SEALED), ECF No. 22, and such harms provide compelling reasons for the NDO, even under the exacting requirements of strict scrutiny review, assuming that standard should apply here, *id.* at 13.[2]

Separately, the parties also dispute whether monetary sanctions are warranted against Twitter because, while focusing on intervening in this criminal investigation and obtaining

---

[1]    The Twitter account at issue is @realDonaldTrump, which is the recently reinstated account of former President Donald J. Trump. *See* Claire Duffy and Paul LeBlanc, "Elon Musk restores Donald Trump's Twitter account," CNN (Nov. 20, 2022), available at https://www.cnn.com/2022/11/19/business/twitter-musk-trump-reinstate/index html (last visited on Mar. 1, 2023) ("The much-anticipated decision from the new owner sets the stage for the former president's return to the social media platform, where he was previously its most influential, if controversial, user. With almost 90 million followers, his tweets often moved the markets, set the news cycle and drove the agenda in Washington.").

[2]    The government's opposition summarizes extensive evidence of the User's conduct, and those of his associates, raising legitimate concerns ███████████████████████████████████████████. *See* Gov't's *Ex Parte* Opp'n at 3–9; *see infra* nn.4, 6.

permission to alert the User about the search warrant, the company failed fully and timely to comply with the Warrant, in violation of two court orders.

As explained below, the government has established that, even if strict scrutiny analysis applies—which the Court assumes without deciding—the compelling interests of avoiding the harms to the criminal investigation, as authorized in § 2705(b), warrant Twitter's continued nondisclosure of the warrant's existence, and the NDO is the narrowest possible way available to protect those compelling government interests.  Accordingly, Twitter's motion to vacate or modify the NDO is denied.  Moreover, Twitter must pay $350,000 in contempt fines for failing to comply with the warrant in a timely manner, a delay for which Twitter bears full responsibility.

## I.    BACKGROUND

The relevant statutory, factual and procedural background is summarized below.

### A.    Statutory Framework

The SCA governs how providers of "electronic communications service[s] ["ECS"]," as defined in 18 U.S.C. § 2510(15), and "remote computing service ["RCS"]" providers, as defined in 18 U.S.C. § 2711(2), may be compelled to supply records related to that service in response to a subpoena, court order, or search warrant.  As relevant here, the SCA's §§ 2703(a), (b)(1)(A), and (c) provide that the government may obtain contents of communications, as well as non-content information and records or other information, about a subscriber or customer of such service, via a search warrant.  *See Id.* § 2703(a)-(c).  Twitter enables account holders to share and interact with electronic content and to send and receive electronic communications with other users, publicly or privately, and is indisputably an ECS and RCS provider.  *See* NDO Appl. ¶ 3.

The SCA is silent as to any obligation of ECS/RCS providers to notify subscribers about the providers' production of records in response to subpoenas, court orders, or search warrants, implicitly allowing such notification on a voluntarily basis.  Indeed, Twitter promotes a policy of

"notify[ing] its users of any requests from law enforcement for account information, particularly requests for contents of communications, unless prohibited from doing so." Twitter Mem. at 1. The SCA is explicit, however, in authorizing "governmental entit[ies]," which includes federal "department[s] or agenc[ies]" and those of "any State or political subdivision thereof," 18 U.S.C. § 2711(4), to apply for and obtain a judicial order "commanding" a provider of ECS or RCS "to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id*. § 2705(b). Upon receipt of such an application, the SCA requires that "[t]he court *shall* enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in" any of five enumerated harms. *Id*. (emphasis added). These enumerated harms broadly cover: "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id*. "The explicit terms of section 2705(b) make clear that if a court[] finds that there is reason to believe that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b), the court must enter an order commanding a service provider to delay notice to a customer for a period of time that the court determines is appropriate." *Matter of Application of U.S. of Am.*, 45 F. Supp. 3d 1, 5 (D.D.C. 2014).

A service provider is authorized to move "promptly" to quash or modify an order for disclosure of the contents of communications, such as the warrant at issue here, under two specific circumstances: first, "if the information or records requested are unusually voluminous in nature," 18 U.S.C. § 2703(d), or, second, "compliance with such order otherwise would cause an undue

burden on such provider," *id*.  Twitter does not contend that either of those circumstances are present here. The SCA is notably silent in providing any statutory authorization for a service provider to challenge an NDO.  Instead, in a mechanism designed to encourage compliance with NDOs and minimize litigation, particularly during an ongoing criminal investigation when SCA authorities are employed by law enforcement, the SCA expressly relieves providers from any liability on any claim in any court for disclosing their customer's information in compliance with an SCA order.  *See id*. § 2703(e) ("No cause of action shall lie in any court against any provider of wire or [ECS], its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter.").

### B.    The Search Warrant and NDO At Issue

On November 18, 2022, Attorney General Merrick Garland announced the appointment of Jack Smith to serve as Special Counsel to oversee two ongoing criminal investigations into (1) unlawful interference with the transfer of power following the 2020 presidential election, including certification of the Electoral College vote held on January 6, 2021, ("the January 6th Investigation"), and (2) unlawful retention of classified documents and possible obstruction ("the Classified Documents Investigation").  *See* "Appointment of a Special Counsel," Department of Justice (Nov. 18, 2022), available at https://www.justice.gov/opa/pr/appointment-special-counsel-0 (last visited on Mar. 2, 2023).  As part of the January 6th Investigation, on January 17, 2023, the government applied for, and the Court issued, based on an affidavit establishing probable cause to believe the Target Account contains evidence of criminal activity, a search warrant to search the Target Account and seize responsive records ██████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

5

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Search and Seizure Warrant ("Warrant") (SEALED), ECF No. 4; *see also* Gov't's Appl. And Aff. in Supp. of Appl. for a Search Warrant ("Warrant Affidavit" and "Warrant Application"), ECF No. 1. The Warrant itself has two attachments: Attachment A, describing the "Property to Be Searched," and Attachment B, the "Particular Things to Be Seized," and is separate from both the Warrant Application and the Warrant Affidavit. Warrant at 2.

In addition to the Warrant, the government applied for, and this Court issued, an order sealing the Warrant and related materials, and requiring, under 18 U.S.C. § 2705(b), that Twitter not disclose the contents or existence of the Warrant for a period of 180 days. *See* Order Granting the Gov't's Appl. for an Ord. Pursuant to 18 U.S.C. § 2705(b) as to Twitter, Inc. ("NDO") (SEALED), ECF No. 3. The NDO was granted based on the government's proffered facts showing reasonable grounds to believe that notifying the Target Account's User of the existence of the Warrant "would result in destruction of or tampering with evidence, intimidation of potential witnesses, or other serious jeopardy to this investigation." NDO Appl. ¶ 10; 18 U.S.C. § 2705(b)(3)-(5).[3] The government's accompanying lengthy Warrant Affidavit detailed various actions of the User, and the User's associates, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[4]

---

[3]     By contrast to the Application for the NDO, the NDO itself also offered as grounds for nondisclosure the basis that the user of the Target Account would "flee from prosecution." NDO at 1. The government has since explained that justification to the NDO was erroneously included. *See* Gov't's *Ex Parte* Opp'n at 3 n.1.

[4]



### C.     Procedural History

The Warrant was issued on January 17, 2023, and required Twitter's compliance within ten days of "issuance," Warrant, Att. B. § I, ¶ 5, meaning by January 27, 2023.  Twitter's compliance ended up taking over double the amount of time provided in the Warrant.

### 1.     *Service on Twitter of Relevant Part of Warrant and NDO*

On the same day as issuance of the Warrant, the government attempted to serve the Warrant and the NDO on Twitter through the company's Legal Requests Submissions online site.  Gov't's Mot. for Ord. Show Cause at 2 ("Gov't's Mot.") (SEALED), ECF No. 5.  Specifically, six pages



of the Warrant were submitted to Twitter, consisting of the Warrant with Attachment A and part of Attachment B. *See* Gov't's *Ex Parte* Opp'n, Ex. A. (SEALED), ECF No. 22-1; *see also* Feb. 7, 2023 Hrg. Tr. at 9:1-19 (same). Twitter has thus never been privy to the remaining parts of Attachment B to the Warrant, the Warrant Affidavit or Application, nor even the Application for the NDO. Twitter Mem. at 1 (conceding "Twitter has not seen" the *ex parte* application for the NDO); Feb. 7, 2023 Hrg. Tr. at 9:1-19 (government counsel agreeing that Twitter has only seen the warrant, Attachment A, and Part 1 of Attachment B).

The government's initial service attempts on Twitter failed twice, with the government's receipt both times of an automated message indicating that Twitter's "page [was] down." Gov't's Mot. at 2 (alteration in original).  On January 19, 2023, the government was finally able to serve Twitter through the company's Legal Requests Submissions site. *Id.*

Twitter, however, somehow did not know of the existence of the Warrant until January 25, 2023—two days before the Warrant returns were due.  That day, the government contacted Twitter about the status of the company's compliance with the Warrant, and Twitter's Senior Director of Legal, Katherine Lee Martin, "indicated she was not aware of the Warrant but would consider it a priority."  *Id.*; *see also* Decl. of Katherine Lee Martin, Senior Director of Legal for Twitter ("Martin Decl.") ¶ 2 (SEALED), ECF No. 9-1.  The government indicated that "they were looking for an on time production, in two days[,]" to which Martin responded, "without knowing more or taking any position that would be a very tight turnaround for us."  Martin Decl. ¶ 2.  The government sent the six pages of the Warrant and the NDO directly to Martin later that evening. Meanwhile, Martin directed Twitter's personnel to preserve data available in its production environment associated with the Target Account, and "have confirmed that the available data was preserved."  *Id.* ¶ 4.

Twitter notified the government in the evening of January 26, 2023, that the company would not comply with the Warrant by the next day, *id.* ¶ 5, and responded to the government's request for more specific compliance information, by indicating that "the company was prioritizing the matter and taking it very seriously" but that Martin had the Warrant and NDO only "for two days," *id.* ¶ 8, even though the government had tried to submit the Warrant and NDO through Twitter's Legal Requests Submissions site nine days earlier. The Warrant's deadline for compliance makes no exception for the provider's failure to have a fully operational and functioning system for the timely processing of court orders.

On January 31, 2023, Twitter indicated for the first time that the company would not comply with the Warrant without changes to the NDO, stressing as "essential to Twitter's business model (including [its] commitment to privacy, transparency, and neutrality) that [Twitter] communicate with users about law enforcement efforts to access their data." *Id*. ¶ 10.  Referencing that "on occasion, [Twitter has] challenged nondisclosure orders," Martin asserted that the NDO "did not . . . meet[] the factors outlined in § 2705(b), given the intense publicity around the investigation." *Id.*  In a subsequent conversation with government counsel, Martin made clear that "Twitter's position would be that we should not produce until we resolved our questions as to the NDO." *Id.* ¶ 12.

## 2.   *Government and Twitter's Cross Motions*

Given Twitter's refusal to comply with the Warrant unless and until its condition was met allowing disclosure of the Warrant to the Target Account user (or user's representatives), on February 2, 2023, the government moved for an Order to Show Cause "why Twitter Inc. should not be held in contempt for its failure to comply with the Warrant."  Gov't's Mot. at 1.  The government explained Twitter had no basis for refusing to comply with the Warrant, pointing out that the Warrant and NDO were different court orders, so Twitter could "not delay, to an unknown

9

future date, compliance with the Warrant by challenging the NDO," *id*. at 3, and arguing that neither "the Warrant itself nor Section 2703 provide for intervention by a third party before compliance with the Warrant is required," *id*.

The same day, Twitter filed its motion to vacate or modify the NDO and stay compliance with the Warrant, arguing that the requested stay was required to "(1) prevent irreparable injury to Twitter's interests that would occur if production under the Warrant were required prior to resolution, and (2) to preserve the status quo as to the user's interest in potentially seeking to assert privilege or otherwise curtail derivative use of potentially privileged communications." Twitter Mem. at 3. Twitter highlighted that the Target Account's User could, in theory, exert a privilege over his private communications on Twitter (through direct messages with other users), and should have the opportunity to exert privilege prior to Twitter turning over the information to the government. *Id.* at 12–14

The parties were directed to confer and propose a briefing schedule for the pending motions, Min. Order (Feb. 2, 2023) (SEALED), and the schedule proposed by the government was ultimately adopted, *see* Min. Order (Feb. 3, 2023) (SEALED).

### 3. *Hearing on and Resolution of Government's Motion For Order To Show Cause*

At a hearing held on February 7, 2023 on the government's motion, *see* Minute Entry (Feb. 7, 2023) (SEALED), Twitter conceded that: (1) the company had no standing to assert any privilege by any of its users, including the Target Account's User, Feb. 7, 2023 Hrg. Tr. at 66:3-4; *accord* Twitter Opp'n Mot. Ord. Show Cause at 3 ("Twitter Opp'n") (SEALED) (same), ECF No. 9 (SEALED); (2) the company had no confirmation that the Target Account's User wanted or would seize on any opportunity to assert any privilege if such opportunity were provided, *see* Feb. 7, 2023 Hrg. Tr. at 54:11-25; and (3) the company was operating on a mere sliver of the

information presented to the Court in support of issuance of the Warrant and the NDO, *see id.* at 48:15-19.

Nevertheless, Twitter argued that "producing the requested information prior to allowing it the opportunity to alert the [Target Account's User] would irreparably injure its First Amendment rights." *Id.* at 65:10-14. This argument was rejected for both practical and logistical reasons as well as legal grounds. If accepted, Twitter's argument would invite repeated litigation by Twitter and other ECS providers to challenge NDOs in order to alert users to SCA orders, particularly for high profile, highly placed users, such as current or former government officials, with whom the providers might want to curry favor, with concomitant and inevitable delays in execution of SCA orders and resultant frustration in expeditiously conducting criminal investigations. *See id.* at 65:14-20. As a legal matter, the NDO was a wholly separate order from the Warrant, with different standards applicable to issuance of each.

These concerns had been well articulated by another court in a similar situation of being confronted with a government motion to compel compliance with an SCA warrant and an ECS provider simultaneously seeking to challenge an NDO, and capsulized this Court's decision to grant the government's motion because the "public interest is served by prompt compliance with the [W]arrant" because "any challenge to a NDO is separate from a challenge to a search warrant [since] any further delay on the production of the materials responsive to the Warrant increases the risk that evidence will be lost or destroyed, heightens the chance the targets will learn of the investigation, and jeopardizes the government's ability to bring any prosecution in a timely fashion." *Id.* at 66:11-17 (paraphrasing *Google v. United States,* 443 F. Supp. 3d 447, 455 (S.D.N.Y. 2020)).

11

In response to the Court's direct question, Twitter's counsel represented that the company was prepared to and could comply with the Warrant by 5:00 PM that day.  *See* Feb. 7, 2023 Hrg. Tr. at 63:16-19 (THE COURT: Okay. Can Twitter produce the [W]arrant returns by 5 p.m. today? MR. VARGHESE: I believe we are prepared to do that. Yes, Your Honor.").  The government requested that if Twitter failed to comply with the Warrant by 5:00 PM that day, an escalating sanction should be imposed, starting at a sanction of $50,000, an amount that should "double each day thereafter." *Id.* at 33:6-22; *see also id.* at 33:2-5 (the Court noting that the company "was bought for $40 billion, and the CEO, sole owner is worth . . . over $180 billion"); Gov't's Reply Supp. Mot. Order Show Cause ("Gov't's Reply") at 10 (SEALED), ECF No. 11 (requesting "escalating daily fines" for continued noncompliance by Twitter with the Warrant, at an amount "commensurate with the gravity of Twitter's non-compliance and Twitter's ability to pay").  With Twitter's assurance of full compliance by close of business that day, and given Twitter's already tardy compliance with the Warrant, the Court ordered Twitter to comply with the Warrant by 5:00 p.m. that day or be held in contempt and subject to a fine of $50,000, to double every day of continued non-compliance with the Warrant.  *See* Min. Order (Feb. 7, 2023) ("Show Cause Order") (SEALED).

### 4.     *Twitter Fails To Comply Timely With Court's Show Cause Order*

Despite representing that the company would and could comply with the Warrant by 5:00 p.m. on February 7, 2023—by that point, nearly two weeks late—Twitter failed timely to comply with the Show Cause Order.  Gov't's Notice Re. Twitter's Non-Compliance with the Warrant (SEALED), ECF No. 25.  The government explained that prior to 5:00 PM on February 7, "Twitter made a production to the [g]overnment," but "[i]n a follow up call on February 8, counsel for Twitter identified certain information that may (or may not) exist in their holdings and that had not been produced to the [g]overnment." *Id.*  Twitter made another production on February 9, and

in a subsequent call, alerted the government that further productions were expected, though the company could not provide a timeframe when "all materials responsive to the Warrant would be produced." *Id.* The government accordingly requested a prompt in-person hearing that day regarding Twitter's continued failure to fully comply with the Warrant. *Id.*

At a hearing held later on February 9, 2023, *see* Minute Entry (Feb. 9, 2023); Feb. 9, 2023 Hrg. Tr. 4:1-5 (SEALED), the Court reviewed with Twitter each part of Part I of Attachment B to the Warrant to assess the extent of compliance and noncompliance by identifying the responsive records Twitter had yet to produce. *See* Feb. 9, 2023 Hrg. Tr. at 6:1–48:20. During this process, Twitter raised questions for the first time about certain requests, demonstrating that the company had failed to confer effectively with the government. *See, e.g.,* Feb. 9, 2023 Hrg. Tr. at 5:1-7 (government counsel commenting about Twitter "attempting to cabin one of the requests in the warrant," during a call earlier on February 9); *id.* at 18:25–19:4 (government counsel explaining that "[t]his is the first time I have heard a complaint about a date limitation on 1H"); *id.* at 31:21-24 (government counsel, stating, "What [the government was] told was that there was one preservation done of the entire history of the account on January 11th. This is the first time we are hearing about another preservation between January 3rd and January 9."); *id.* at 30:2-22, 31:25–32:3 (after Twitter counsel explained that they were collecting data on potentially responsive "fleets," *i.e.* "vanishing tweets," government counsel responded, "I have never heard of 'fleets' in part of any discussion that we have had. I don't know if that is information in this account; it may or may not be. It still will be relevant, it still will be responsive.").

After a line-by-line review of Twitter's responsive and not yet completed productions to the Warrant, Twitter promised to provide an update to the government, by 4:00 PM that day, explaining what responsive records were left to produce and when production would be completed.

13

*Id.* at 48:21-24.  At the end of the hearing, the Court instructed the government to calculate the total penalty for Twitter's failure to comply with the Show Cause Order by the 5:00 p.m. deadline on February 7, and submit notice of the same to the Court.  *Id.* at 49:5-14.

The government supplied notice, on February 13, 2023, *see* Gov't's Not. Re. Accrued Sanction ("Government Notice") (SEALED), ECF No. 19, that Twitter advised the government, at 8:28 p.m. on February 9, 2023, that "it believed 'Twitter's obligations under the Warrant and the Court's order were complete.'"  *Id.* at 1–2.  With respect to the fine amount, the government calculated that Twitter owed "$350,000, payable to the Clerk of the Court."  *Id.* at 2 ("By the terms of the Court's order, Twitter was in contempt as of 5:00 p.m. on February 7, 2023, at which point a $50,000 sanction came into effect.  An additional amount of $100,000 accrued at 5:00 p.m. on February 8, 2023, since Twitter still had not fully complied with the Warrant as of that time. And at 5:00 p.m. on February 9, 2023, an additional amount of $200,000 accrued.").

Twitter disputes that any sanction is appropriate, *see* Twitter Not. Re. Appl. Of Sanctions at 1 ("Twitter Notice") (SEALED), ECF No. 18, because the company acted in good faith to comply speedily after the February 7 hearing, and the government bears the fault for production delays due to the government's nonstandard requests combined with the government delaying clarifying the scope of the Warrant's requirements.  *See generally id.*

## II.    DISCUSSION

Twitter's motion asserts that the NDO violates its First Amendment right to inform the Target Account's User of the existence of the Warrant, and accordingly requests the NDO be modified to allow notification to that User (or his authorized representatives).  *See* Twitter Mem. at 2–3.  The government opposes Twitter's motion, with both a sealed opposition shared with Twitter and in an *ex parte* filing.  *See* Gov't's *Ex Parte* Opp'n; Gov't's Sealed Opp'n Twitter's

14

Mot. to Vacate or Modify NDO (SEALED), ECF No. 22.  As discussed below, Twitter's motion is denied and sanctions are appropriately levied here.

### A.    Twitter's Challenge to the NDO Is Without Merit

Twitter asserts that the NDO "constitutes a content-based prior restraint on [its] speech," and the government's interests in keeping the Warrant secret cannot "satisfy strict scrutiny in light of the significant publicity surrounding the Department of Justice's criminal investigation into the" January 6th Investigation and the Classified Documents Investigation.  Twitter Mem. at 2.  Claims under the Free Speech Clause of the First Amendment, U.S. CONST. AMEND. I, are analyzed in three steps: (1) "whether the activity at issue is protected by the First Amendment[;]" (2) "whether the regulation at issue is content based or content neutral, *i.e.*, if it applies to particular speech because of the topic discussed or the idea or message expressed[;]" and (3) whether the government's justifications for restricting the plaintiff's speech satisfy the relevant standard, *i.e.*, strict or intermediate scrutiny.  *Green v. United States Dep't of Just.*, 54 F.4th 738, 745 (D.C. Cir. 2022) (cleaned up).  Strict scrutiny requires that the government show its restriction on speech is "narrowly tailored to serve compelling state interests."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative."  *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000).

As to the first step, Twitter correctly points out that "the government does not seriously contest that Twitter has a First Amendment interest in informing its user of the Warrant, nor that the Non-Disclosure Order operates as a prior restraint on such speech[.]"  Twitter Reply Supp. Mot. to Vacate or Modify NDO ("Twitter Reply") at 1 (SEALED), ECF No. 27.  Other courts have concluded, and this Court so finds here, that a nondisclosure orders issued under the authority of the SCA's § 2705(b) "implicate First Amendment rights because they restrict a service provider's speech" and "also constitute[] prior restraint, a characterization typically used to describe 'judicial

15

orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Matter of Subpoena 2018R00776*, 947 F.3d 148, 155 (3d Cir. 2020) *("Matter of Subpoena")* (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)); *see also Google*, 443 F. Supp. 3d at 452; *In re Info. Associated with E-Mail Accts.*, 468 F. Supp. 3d 556, 560 (E.D.N.Y. 2020) ("*In re E-Mail Accounts*"); *Matter of Search Warrant for [redacted].com*, 248 F. Supp. 3d 970, 980 (C.D. Cal. 2017) (collecting cases).

With respect to the second step, no decision from this Court, the D.C. Circuit, or the Supreme Court has established whether strict scrutiny or intermediate scrutiny applies when an ECS provider challenges a nondisclosure order issued pursuant to the SCA's § 2705(b). On the one hand, a nondisclosure order is a content-based restriction on speech, and content-based restrictions are normally evaluated under strict scrutiny. *Green*, 54 F.4th at 745 ("[W]e apply . . . strict scrutiny for content-based statutes[.]"); *see also In re Nat'l Sec. Letter*, 33 F.4th 1058, 1072 (9th Cir. 2022) (applying strict scrutiny to a nondisclosure requirement because it "is content based on its face" since "the nondisclosure requirement prohibits speech about one specific issue"). At the same time, in this context, a "nondisclosure requirement" is "not a typical example of such a restriction for it is not a restraint imposed on those who customarily wish to exercise rights of free expression, such as speakers in public fora, distributors of literature, or exhibitors of movies." *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 876 (2d Cir. 2008). Indeed, considering that nondisclosure orders tend to be narrow in scope, limited to their accompanying orders or warrants and the facts surrounding them, good reasons exist to subject such orders only to intermediate scrutiny instead of the exacting requirements of strict scrutiny. *See id.* at 876 ("[T]he nondisclosure requirement is triggered by the content of a category of information . . . is far more

16

limited than the broad categories of information that have been at issue with respect to typical content-based restrictions.").

The strict-scrutiny debate need not be resolved here.  Assuming, without deciding, that strict scrutiny applies to nondisclosure orders, the NDO at issue here survives strict scrutiny review as a narrowly tailored restriction for which no less restrictive alternative is available that would be at least as effective in serving the government's compelling interests.

### 1.      *The NDO serves a compelling government interest*

The government says that the NDO safeguards "the integrity and secrecy of an ongoing [criminal] investigation" ███████████████████████████████████.  Gov't's *Ex Parte* Opp'n at 14–15.  According to the government, these secrecy interests are particularly salient here because ████████████████████████████████████████████████████████████████

███████████████████ based on the evidence outlined in its *ex parte* opposition.  *Id.* at 15; *see also supra* at n. 4, *infra* n.6, and associated text

The government is correct.  For starters, "[m]aintaining the integrity of an ongoing criminal investigation is a compelling governmental interest."  *In re E-Mail Accounts*, 468 F. Supp. 3d at 560; *see also United States v. Smith*, 985 F. Supp. 2d 506, 545 (S.D.N.Y. 2013) ("[T]he [g]overnment has demonstrated that there is good cause for a protective order because of its compelling interest in ongoing investigations into potentially serious criminal conduct that could be jeopardized by dissemination of the discovery."); *Matter of Subpoena 2018R00776*, 947 F.3d at 156 ("The government's interest is particularly acute where, as here, the investigation is ongoing.").  That compelling interest here is magnified by the national import of the January 6th investigation into conduct that culminated in a violent riot at the U.S. Capitol on January 6, 2021, and the disruption of the Joint Session of Congress to certify the results of the 2020 presidential election.  Ferreting out activity intended to alter the outcome of a valid national election for the

leadership of the Executive Branch of the federal government, which activity undermines foundational principles of our democracy, and assessing whether that activity crossed lines into criminal culpability, presents as compelling a governmental interest as our very national security. *See Haig v. Agee*, 453 U.S. 280, 307 (1981) (quotation marks omitted) ("It is obvious and inarguable that no governmental interest is more compelling than the security of the Nation."); *see also* Gov't's Opp'n at 14 ("And that interest is all the more compelling where the investigation concerns an effort to overturn the results of an election and thwart the transfer of presidential power—an effort that culminated in a mob attack on the United States Capitol as lawmakers sought to carry out their constitutional and statutory obligation to certify the Electoral College results.").

Additionally, the government has a strong interest in maintaining the "confidentiality of [its] investigative techniques and [not] cause the subjects of other investigations to change their conduct to evade detection and otherwise thwart future investigations of similar allegations." *Cf. In re Los Angeles Times Commc'ns LLC*, No. MC 21-16 (BAH), 2022 WL 3714289, at *8 (D.D.C. Aug. 29, 2022) (quotation marks omitted) (holding that these weighty law enforcement interests, in the context of an application to unseal court records under the common-law right of public access to judicial records, weighed in favor of continued sealing of certain search-warrant materials). Thus, the SCA deems certain factors to be sufficiently compelling to justify issuance of a nondisclosure order based on reason to believe that disclosure otherwise would pose a risk of destruction or tampering with evidence, intimidation of witnesses, or "otherwise seriously jeopardizing an investigation or unduly delaying a trial." 18 U.S.C. § 2705(b)(3)-(5). In short, maintaining the confidentiality of the government's criminal investigation into any efforts ███ ████████████████████████ to overturn the 2020 election to ensure that all those responsible and criminally liable, or not, are identified and that relevant documentary and

testimonial evidence is both preserved and collected, without spoliation, alteration or tampering, plainly serves compelling government interests.

Twitter disagrees.  In Twitter's view, "the government cannot credibly show that the [NDO] . . . serves a compelling governmental interest," citing "the voluminous publicly available information about the investigation," Twitter Mem. at 8; *id*. at 9-10 (describing, *inter alia*, media reports about witnesses "subpoenaed to testify before a federal grand jury" and the appointment of Special Counsel Jack Smith); *see also* Twitter Opp'n at 13 (arguing that public revelation of the search and seizure Warrant at issue here would pose "no credible risk" because "the publicity surrounding the investigations" being conducted by Special Counsel Jack Smith "is widespread and unprecedented," making this investigation "wholly distinct from any typical covert law enforcement investigation where the targets are unaware of the government's activities").  With this perception of "no credible investigative reasons to bar disclosure [] of the existence of the Warrant," Twitter urges that the Target Account's User be alerted to the Warrant so he "may raise whatever concerns he has, if any, for determination by this Court in a full adversarial proceeding." Twitter Mem. at 14.  While Twitter denies taking any position "on the applicability of [any] privilege or the validity of the Warrant," Twitter Opp'n at 1 ("Twitter is not taking a position . . . ."); *id*. at 7 ("Twitter takes no position on the applicability of [] privilege as to these communications in this circumstance."), Twitter's real objection then is that the government is proceeding covertly with a criminal investigation when, in the company's view, any privilege issue "should be resolved through a full adversarial process involving the real parties in interest, not through an *ex parte* secret filing."  *Id.* at 8; Twitter Mem. at 2 ("Allowing Twitter . . . to notify the account holder would afford the user . . . an opportunity to address the legal issues surrounding a

19

demand for [ ] communications in this unique context, and give this Court a full adversarial process in which to evaluate them.").

Twitter makes this demand for an adversarial assessment of privilege issues as a condition of complying with the Warrant, despite not being privy to the full Warrant, ███████████, ███████████████████████████████████████████, let alone the other proffered evidence presented to the Court in issuing the Warrant and the NDO. *See* Feb. 7, 2023 Hrg. Tr. at 9:20–10:19. Put another way, Twitter is taking the extraordinarily aggressive position as a service provider to demand that a covert step taken in an ongoing grand jury and criminal investigation be made public, at least to the account user, before complying with a court order, notwithstanding the informational void on which it stands.

Despite the fact that Twitter has been privy to only a sliver of the government documentation underlying the Warrant and NDO, and thus is quite ignorant of details about and the scope of the government's current investigation into unlawful interference with the transfer of power following the 2020 presidential election and ██████████████████████ in such illegal activity, the company nonetheless boldly contests any compelling interest the government may have in continuing to conduct its investigation covertly, bolstered by the NDO, for three reasons, each of which is meritless. First, Twitter challenges each of the government's articulated justifications for the NDO under Section 2705(b), arguing that because some aspects of the investigation are publicly known, it "strains credulity to believe" that providing the Warrant to the Target Account's User will "alter the current balance of public knowledge in any meaningful way" since that disclosure would at most be "incremental." Twitter Mem. at 11.[5] For instance, the

---

[5]     In support, Twitter cites news articles discussing the existence of the government's investigations and certain public steps the government has taken as part of its investigations or courthouse citing of witnesses. Twitter Mem. at 9–11; *see also* Twitter Opp'n, Ex. B (SEALED), ECF No. 9-2 (culling eighty pages of similar articles discussing the investigations); Twitter Reply at 5–6 (identifying several members of former president's administration that have been

company argues that disclosure of the Warrant is not likely to prompt "the destruction of *other* evidence," Twitter Reply at 4 (emphasis in original), because the public and the User know that the User is under investigation for any involvement in interfering "with Congress's certification of the presidential election on January 6," *id.* Nor would it be reasonable, Twitter asserts, "to conclude that disclosure of this Warrant in particular would spur witness intimidation in view of that which is already well known about this investigation's seizure of electronic communications," or that the investigation would be seriously jeopardized because the Attorney General "confirmed the investigation, its scope, and the identity of the target" to the country. *Id.* at 7–8.

Twitter misapprehends the risks of disclosure here. For one thing, without being privy to any non-public information about the investigation, including the full Warrant, Warrant Application and Affidavit, and NDO Application submitted to the Court, Twitter is simply in *no position* to assess how much of the media reports and general public information about the investigation are accurate and how limited that information may be compared to what is known to investigators. Put bluntly, Twitter does not know what it does not know.

More importantly, Twitter's argument is unmoored from the realities of what disclosure would mean here. As the government observes, Gov't *Ex Parte* Opp'n at 16, Attachment B to the Warrant provides significant insight into the type and nature of information that the government requested and targets a key social media account. No public reporting has, thus far, indicated execution of search warrants for the contents of the User's personal electronic communications and records, even if the User is aware of the general contours of the government's

---

subpoenaed or compelled to testify, including former vice president Pence, the former president's daughter and advisor Ivanka Trump and her husband Jared Kushner, his former chief of staff Mark Meadows, and others). Twitter also observes that government has itself "confirmed it has seized and is reviewing the email accounts of [the former president's] associates as part of the investigation." Twitter Reply at 9 (citing *In re Application of the N.Y. Times Co. & Charlie Savage*, 2023 WL 2185826 (D.D.C. Feb. 23, 2023) ("*In re N.Y. Times*")).

investigation.  Specific identification of the Warrant could prompt witnesses, subjects, or targets of the investigation to destroy their communications or records, including on Twitter or other social media platforms, and could lead the User to ratchet up public and private pressure on others to refuse to be cooperative with the government, or even to engage in retaliatory attacks on law enforcement and other government officials that have real world and violent consequences.  This is not a "conclusory" harm Twitter dismisses out of hand based on its limited information, but rather could "endanger the life or physical safety of" government officers or "otherwise seriously jeopardiz[e]" the government's investigation.  *See* 18 U.S.C. §§ 2705(b).  Permitting Twitter to alert the Target Account's User of the Warrant may prompt a response to this new investigative scrutiny of the User's conduct that could very well result in one of the enumerated harms set out in Section 2705(b).

Twitter points to "'the partial unsealing of two judicial decisions resolving filter team motions'" in relation to one of Special Counsel Smith's investigations, Twitter Reply at 9 (quoting *In re N.Y. Times*, 2023 WL 2185826 *15), but this is both unpersuasive and supports maintaining the NDO.  The two unsealed judicial decisions addressed review of the contents of email accounts that are not those of the Target Account's User, so the unsealing of those decisions raise entirely different risk assessment contexts than here.  Furthermore, this Court's decision in *In re N.Y. Times* makes clear that "reliance on and deference to the government is necessary" when considering whether the release of grand jury materials might harm the government's investigation because "courts are not made aware of the full scope of materials presented to the grand jury and therefore are not best positioned to execute redactions[.]"  *Id.* at *9.  As Twitter correctly notes, the Warrant exists outside the grand jury context—though Warrant returns may be presented to the grand jury and to that extent become "a matter occurring before the grand jury," subject to secrecy, under

22

FEDERAL RULE OF CRIMINAL PROCEDURE 6(e). Yet, the exact same point made in *In re N.Y. Times* supports maintaining the NDO because the government remains, both in the grand jury and covert SCA warrant contexts, in the best position to understand how, when, and whether alerting the user of certain information might impair an ongoing criminal investigation. The government's *ex parte* filing, as well as the Warrant and NDO Application, provide ample good reason to support the NDO here to avoid any enumerated harm under the SCO's § 2705(b). *See John Doe*, 549 F.3d at 881 (explaining that "the court will normally defer to the Government's considered assessment of why disclosure in a particular case may result in an enumerated harm" if the government has "at least indicate[d] the nature of the apprehended harm and provide[d] a court with some basis to assure itself (based on *in camera* presentations where appropriate) that the link between disclosure and risk of harm is substantial").[6]  That justification for the NDO supplies sufficient compelling

---

[6]

reason for preventing Twitter from disclosing the Warrant to anyone, including the Target Account's User (or the User's representatives).

Second, Twitter believes that "[u]nique and [i]mportant" privilege issues support the relief it seeks, Twitter Mem. at 12, but that argument is irrelevant to whether the government has a compelling interest in maintaining the NDO.[7] Twitter's interests here are purely about its right to speak to the Target Account's User, not what privileges that User may assert. Indeed, Twitter concededly has no standing to raise any issue as to any privilege the User may hold. *See* Twitter Mem. at 4. As the Court previously explained, the Warrant and the NDO do not travel together "because any further delay on the production of the materials" creates an ongoing harm to the government's investigation, Feb. 7, 2023 Hrg. Tr. at 66:11-17; *see also Google*, 443 F. Supp. at

---

Even though Twitter is not privy to the information contained in the government's *ex parte* filings, Twitter is plainly aware of, and even cites to, former Special Counsel Robert Mueller's investigation into then-President Trump. *See* Twitter Opp'n at 5 n.5 (citing Special Counsel Robert S. Mueller III, *Report on the Investigation Into Russian Interference in the 2016 Presidential Election* ("Mueller Report"), Vol. II at pg. 82 n. 546, Dept. of Justice (March 2019), available at https://www.justice.gov/storage/report_volume2.pdf (last visited on Mar. 2, 2023)). The Mueller Report details extensively how former President Trump engaged in obstructive conduct to thwart the former Special Counsel's investigation into Russian Interference in the 2016 presidential election. *See, e.g.*, Mueller Report, Vol. II at pg. 85–90 (discussing how, in June 2017, the former president directed White House Counsel Don McGahn to order the firing of the Special Counsel after press reports that Mueller was investigating the former for obstruction of justice); *id.* at 109-13 (observing that, in 2017 and 2018, the former president pressed Attorney General Sessions to "un-recuse" himself from the Special Counsel Mueller's inquiry, and a "reasonable inference" could be made that, from those actions, the former president "believed that an unrecused Attorney General would play a protective role and could shield the President from the ongoing Russia Investigation"). Given that Twitter is aware of the former president's prior efforts to obstruct investigative efforts into his and his associates' conduct, it should be no surprise that the government can demonstrate that revealing the existence of the Warrant poses the reasonable risk of resulting in several of the deleterious consequences under the SCA's § 2705(b).

[7]     Twitter cites to the Mueller Report as an example of then-President Trump being given advance notice of interviews with witnesses that might implicate the executive privilege to give the former president the opportunity to invoke the privilege in advance of the interviews. Twitter Opp'n at 5 n.5 (citing Mueller Report, Vol. II at pg. 82 n. 546). This example, however, elides the fact that while the former president was given advanced notice to invoke executive privilege for witness interviews, no such representation is made about him being given advance notice to assert privilege as to evidence collected through the issuance of "more than 2,800 subpoenas under the auspices of a grand jury sitting in the District of Columbia; [] nearly 500 search-and-seizure warrants; [] more than 230 orders for communications records under 18 U.S.C. § 2703(d)," and other covert orders. Mueller Report, Vol. I at pg. 13.

24

455, and that harm plainly outweighs a temporary denial of Twitter's ability to speak to its user about the existence of the Warrant.  In any event, no matter the privileges the Target Account's User may hold, what matters for purposes of the First Amendment is whether the government has established that the NDO is narrowly tailored to serve a compelling government interest to keep the Warrant confidential.  The government's interests here are plainly compelling.  *See supra* at nn. 4, 6, and associated text.

Third, as a last-ditch argument, Twitter says that the government "was required to make the requisite showing prior to the [NDO] being signed[,]" and any new, "secret rationale" should be rejected as a "*post hoc* rationalization[.]"  Twitter Reply at 13.  Twitter's argument is both factually and legally flawed.  The government's argument is not a *post hoc* rationalization because the Warrant Affidavit, which was considered simultaneously with the NDO Application, provides ample reason justifying the NDO.  Furthermore, Twitter cites no decision in which an NDO has been vacated because the government offered *additional* evidence to support that order when challenged.  *See, e.g., John Doe*, 549 F.3d at 881 n. 15 (noting that the court permitted the government "to amplify its grounds for nondisclosure in a classified declaration submitted *ex parte* . . . and made available for [the court's] *in camera* review").

The case Twitter relies on to assert that the government cannot provide new support for the NDO "that [was] not offered at the time the government first sought the" order, Twitter Reply at 13 (citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758 (1988) ("*Lakewood*")), is entirely inapposite.  *Lakewood* addressed a facial challenge to a city ordinance that gave unbridled discretion to the mayor to issue permits for placement of news racks on public property.  *Id.* at 753–54. The Court struck down the ordinance, because, without objective standards for determining whether a permit should issue, impermissible, content-based rejections could be

disguised by "*post hoc* rationalizations, . . . making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression." *Id.* at 758.  Unlike in *Lakewood*, the government here does not possess unbridled discretion to silence ECS/RCS providers when applying for an NDO.  Rather, an NDO may issue when, as here, the government has adduced evidence to demonstrate to the Court that notifying the customer or subscriber of the court order or subpoena may lead to one of the deleterious outcomes listed under § 2705(b).

### 2. The NDO is narrowly tailored

In the strict-scrutiny context, which is assumed to apply here, the narrow-tailoring requirement is a least restrictive–means test.  This test requires that "[i]f a less restrictive alternative for achieving that interest exists, the government 'must use that alternative.'" *Pursuing Am.'s Greatness v. Fed. Election Comm'n*, 831 F.3d 500, 510 (D.C. Cir. 2016) (quoting *Playboy Entm't Grp.*, 529 U.S. at 804).  The less restrictive alternative must "be at least as effective in achieving the legitimate purpose that the [government action] was [taken] to serve." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 874 (1997); *see also McCullen v. Coakley*, 573 U.S. 464, 495 (2014) (same).  The government explains, correctly, that the NDO is narrowly tailored because: (1) "The scope of speech regulated by the NDO is extremely narrow" since the NDO only "prohibits Twitter from disclosing the existence or contents of the Warrant" and "is limited to 180 days[,]" Gov't's Opp'n at 17–18; and (2) notifying the user or his representatives is untenable because it would be ineffective in maintaining the confidentiality of its investigation, leading to the harms described above, *see id.* at 18–19.

Courts have routinely found that non-disclosure orders satisfy the narrow-tailoring requirement under strict scrutiny so long as the orders are limited in scope and time, and notifying the subject of the investigation, or any other authorized person, would not satisfy the government's

compelling interest in maintaining the confidentiality of its investigation.  For example, in *Google v. United States*, the court held the nondisclosure order in that case was narrowly tailored because "it prohibit[ed] only the disclosure of the existence of the Warrant and of the investigation[,] . . . [and it was] also limited to a one-year time period."  443 F. Supp. 3d at 453.  The government satisfied the least-restrictive-means requirement by demonstrating that notifying "the person or entity to whom the warrant is directed . . . would result in at least one of [§ 2705(b)'s] five enumerated harms" based on the government's lengthy *ex parte* "affidavit setting out . . .why premature disclosure of the warrant and the existence of the investigation could reasonably lead to the destruction of or tampering with evidence and intimidation of potential witnesses, thus making information inaccessible to investigators, and how the disclosure could seriously jeopardize the ongoing investigation."  *Id.*; *see also in re E-Mail Accounts*, 468 F. Supp. 3d at 561–62 (rejecting a similar First Amendment challenge to a one-year NDO as to a warrant and existence of the investigation because the government's *ex parte* affidavit showed "there was a risk that other employees, including higher-ups, were involved in the conspiracy[,]" such that notifying the company of the existence of the warrant could lead to one of the numerated harms under Section 2705(b) and "jeopardize [the government's] investigation").

The NDO is narrowly tailored for the same reasons articulated in *Google* and *In re E-mail Accounts*.  First, the NDO here is even more narrow in scope and time duration than those at issue in *Google* and *In re E-mail Accounts*: the subject matter Twitter is barred from speaking about is limited to the Warrant's contents and existence, and does not impinge at all on the company speaking to the public about the general subject of the January 6th Investigation.  Plus, the NDO applies for 180 days, which is half the duration of the year-long NDOs at issue in *Google* and *In re E-Mail Accounts*.  Second, the NDO presents the least-restrictive means for the government to

satisfy its compelling interests here because notifying the User or his representatives of the Warrant's existence would, for the reasons explained above, likely result in the enumerated harms outlined in 2705(b). *See supra* at nn. 4, 6, and associated text; *see also Google*, 443 F. Supp. 3d at 453; *in re E-Mail Accounts*, 468 F. Supp. 3d at 561–62.

Twitter does not dispute that the NDO is narrow in scope and in time. Instead, Twitter posits that purportedly narrower alternatives could be adopted to preserve the company's "[e]ssential First Amendment [r]ights." Twitter Mem. at 14. Twitter's suggestions are untenable, however, and do not come close to satisfying the government's interests in maintaining confidentiality about this covert investigative Warrant. First, Twitter's suggestion that notifying "just its user" plainly fails because this would likely result in the statutory harms outlined in § 2705(b) for the reasons outlined above. *See supra* at nn. 4, 6, and associated text. Second, Twitter suggests notifying certain of the User's representatives, Twitter Mem. at 14–15; Twitter Reply at 16, but that proposal is preposterous since such the suggested representatives not only may themselves be witnesses, subjects, or targets of either the January 6th or Classified Documents Investigation, but also would be under no bar from immediately alerting the User.[8]

The Third Circuit's decision in *Matter of Subpoena* is instructive here. In challenging an order preventing disclosure of a grand jury subpoena for the data of a customer's employees, the SCA provider that received the grand jury proposed two alternatives, both of which involved notifying the customer's bankruptcy trustee. *Matter of Subpoena*, 947 F.3d at 158. The Third Circuit categorically rejected the proposals as "untenable" and "impractical" because notifying the trustee "would be ineffective in maintaining grand jury secrecy" and would "undermine[] the

---

[8]     Twitter's suggestion that the government obtain the responsive data from NARA, Twitter Mem. at 15, is a nonstarter, both because the Warrant demands more information from Twitter than Twitter provided to NARA about the Target Account, Feb. 7 Hrg. Tr. at 11:7-13, and because this proposal is moot in light of Twitter's representation that it has now fully complied with the Warrant.

government's interest in maintaining the confidentiality of an ongoing investigation." *Id.* at 158–59.  Similar to Twitter's naïve suggestion here that, if not the User, the User's associates should be trusted with the existence of the Warrant, the Third Circuit was invited to "assess the trustworthiness of a would-be confidante chosen by a service provider" for disclosure, but expressly rejected that invitation since neither "courts nor the government can be expected to vet individuals selected by service providers and determine their risk of subverting an ongoing investigation." *Id.* at 159.

For the same reasons articulated in *Matter of Subpoena*, evaluating the viability of Twitter's proposed alternative disclosure tactics is unnecessary since revealing the Warrant to either the User or one of his representatives fall far short of meeting the government's compelling interests in maintaining the confidentiality of its investigation for all of the ample reasons presented in support of the NDO. *See supra* at nn. 4, 6, and associated text.  In short, "[s]trict scrutiny does not demand that sort of prognostication," *Matter of Subpoena*, 947 F.3d at 159, so Twitter's proposed alternatives lack merit.

For the above reasons, the government has satisfied that the NDO meets the exacting requirements of strict scrutiny review under the First Amendment.

### B.   Sanctions

The last dispute between the parties is whether Twitter should be sanctioned for failing to comply on a timely basis, first with the Warrant and then with the Show Cause Order, the latter of which required full compliance by February 7 at 5:00 PM.  Twitter does not contest—nor could it—that the company was in violation of the Warrant and the Show Cause Order as of February 7 at 5:01 PM.  Instead, the company claims a full defense to any sanctions, contending that Twitter substantially, if not fully, complied by the Show Cause Order deadline and acted diligently to finish production in response to the government's nonstandard requests, while accusing the

government of being dilatory in responding to Twitter's requests for clarification. *See generally* Twitter Notice.

The D.C. Circuit has described three stages in a civil contempt proceeding: "(1) issuance of an order; (2) following disobedience of that order, issuance of a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself of contempt by complying with prescribed purgation conditions; and (3) exaction of the threatened penalty if the purgation conditions are not fulfilled." *N.L.R.B. v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981). "At the second stage[,] the recalcitrant party is put on notice that unless it obeys the court's decree and purges itself of contempt it will be fined or face other sanctions." *Id.* at 1185. "At the third stage the court determines whether the party has fulfilled the purgation conditions. If it has, it escapes the threatened penalty; if it has not, the penalty is imposed." *Id.*

Given that both parties agree that Twitter failed timely and fully to comply with the Warrant and Show Cause Order, which imposed monetary sanctions for failure to do so, stage three of the proceedings must be considered: whether monetary sanctions should be imposed. "Once the [movant has] establish[ed] that the [contemnor] has not complied with the order, the burden shifts to the [contemnor] to justify its noncompliance." *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 39 (D.D.C. 2010). "The contemnor is required to show that it has 'done all within its power' to comply with the court's order." *Id.* at 40. (quoting *Pigford v. Veneman*, 307 F. Supp. 2d 51, 57 (D.D.C. 2004)).

Twitter asserts a good faith and substantial compliance defense to being assessed civil sanctions. The D.C. Circuit has left open the ability of a contemnor to assert a defense of good faith and substantial compliance to avoid a civil sanction. *See Food Lion, Inc. v. United Food and*

30

*Commercial Workers*, 103 F.3d 1007, 1017 (D.C. Cir. 1997); *see also id.* at n.16 (collecting three district court decisions leaving open the availability of a good faith and substantial compliance defense to avoid civil contempt sanctions); *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 30 (D.D.C. 2014) (quotation marks omitted) ("Once the court determines that the movant has made the above three-part showing, the burden shifts to the defendant to justify the noncompliance by, for example, demonstrating its financial inability to pay the judgment or its good faith attempts to comply."). "Assuming that the defense survives in this circuit, however, the burden of proving good faith and substantial compliance is on the party asserting the defense[.]" *Food Lion*, 103 F.3d at 1017 (footnote omitted). "In order to prove good faith substantial compliance, a party must demonstrate that it took all reasonable steps within its power to comply with the court's order." *Id.* (quotation marks omitted); *see also Latney's Funeral Home*, 41 F. Supp at 30 (quoting *Int'l Painters*, 736 F.Supp.2d at 40) ("At this stage, conclusory statements about the financial inability to comply or good faith substantial compliance are insufficient; instead, [the contemnor] must demonstrate any offered justification 'categorically and in detail.'").

Ultimately, the decision to hold a party in contempt and assess civil sanctions against a party is left up to the discretion of the district court, based on the record evidence concerning that party's efforts to comply with the court order. *See In re Fannie Mae Sec. Litig.*, 552 F.3d 814, 822–23 (D.C. Cir. 2009) ("District judges must have authority to manage their dockets . . . and we owe deference to their decisions whether and how to enforce the deadlines they impose. Though we recognize [the contemnor's] strenuous efforts to comply, the district court found them to be 'too little too late[.]' . . . Were we on this record to overturn the district court's fact-bound

conclusion that [the contemnor] dragged its feet until the eleventh hour, we would risk undermining the authority of district courts to enforce the deadlines they impose.")

Based on the record above, Twitter's good faith and substantial compliance defense is insufficient to avoid the sanction imposed because the company's substantial compliance with the Show Cause Order deadline (February 7 at 5:00 PM) occurred only *after* it had already delayed production since January 27, the original deadline for compliance with the Warrant in an important ongoing criminal investigation. Twitter repeatedly represented that the company stood ready to comply promptly with the Warrant soon after in-house counsel was made aware of the Warrant's existence on January 25, 2023. *See* Martin Decl. ¶ 4 (noting that Martin directed Twitter's personnel to preserve data available in its production environment associated with the Target Account on January 25, and "have confirmed that the available data was preserved"); Twitter Opp'n at 14 (promising "[a]s a continued demonstration of its good faith efforts to comply with this Court's orders while its First Amendment interests are resolved, . . . to be willing to produce the requested data and communications from the Target Account to the Court or the government, to be held without review until [its Motion] is resolved"); Feb. 7, 2023 Hrg. Tr. at 63:16-19 (Twitter counsel responding to Court's query whether Twitter could comply with the Warrant by February 7 at 5:00 PM, that Twitter is "prepared to do that."). Yet, Twitter waited until after the Show Cause Order deadline passed on February 7 to raise, *for the first time*, multiple questions about the Warrant's document demands, *see* Feb. 9, 2023 Hrg. Tr. at 6:1–48:20, including the company's inability to produce records responsive to data concerning "associated accounts," *id.* at 7:20-8:7 (discussing Warrant, Att. B, ¶ I.B), and cabining date and scope limitations in another request, *id.* at 20:12-20 (discussing Warrant, Att. B, ¶ I.H).

32

If Twitter had been diligent and serious in its good faith intention to comply with the Warrant, those questions should have been identified, raised, and resolved with the government upon receipt of the Warrant on January 19, 2023, or subsequently upon review by in-house counsel on January 25 and 26, 2023, or even during ongoing conversations with the government through February 1, 2023.  That did not happen.  To be sure, Twitter advised the government on February 1, 2023, about "want[ing] to further discuss . . . Attachment B and technical issues [it would] need to work through in responding once the issue is resolved."  Martin Decl. ¶ 14.  Yet, those issues were not pursued by Twitter and appeared to be dropped in favor of litigating, until raised at the February 9, 2023, hearing under the Court's supervision, with sanctions mounting.  That context for raising these issues for the first time does not demonstrate "adequate detailed proof" of good faith and substantial compliance.  *See Int'l Painters*, 736 F. Supp. 2d at 38; *cf. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d at 34-35 (citation omitted) (alteration in original) ("Although Defendants maintain that they are 'aggressively working to find monies to pay [their] past due taxes,' their good faith alone does not absolve them of the fact that they remain in substantial violation of the Injunction.").

Moreover, Twitter represented in its opposition to the government's Motion, and at the February 7, 2023 Hearing, that it stood ready promptly to produce responsive records in full, when required, but plainly this was not so.  Twitter's good faith and substantial defense fails because it did not attempt to resolve specific questions concerning the Warrant's document demands with the government prior to either the February 7 or February 9, 2023, hearings.  *Cf. Food Lion*, 103 F.3d at 1018 (holding that the contemnor "failed to prove that it complied substantially and in good faith with the order" because the order "clearly directed [the contemnor] to search all of its

records[,]" and the contemnor "did not seek a clarification of this order").  In short, Twitter was "too little too late."  *In re Fannie Mae Sec. Litig.*, 552 F.3d at 822 (quotation marks omitted).

As a fallback position, Twitter seeks to excuse the incremental $200,000 penalty assessed on February 9, citing the fact that the government did not clarify its position regarding the scope of the Warrant on February 9 until 3:52 PM that day—giving Twitter just 68 minutes to comply before the final $200,000 penalty was purportedly triggered.  Twitter Notice at 4.  Twitter's argument is rejected for two reasons.  For one thing, Twitter incorrectly assumes that the $200,000 fine was triggered at 5:00 PM on February 9.  The Show Cause Order did not specify that the subsequent fine would trigger at 5:00 PM the next day, but merely provided that Twitter "shall be fined $50,000, a fine amount that shall double *every day*, for failing to comply with this Order[.]"  Minute Order (Feb. 7, 2023) (emphasis added).  That means that Twitter's additional fine of $200,000 accrued as soon as 12:00 AM on February 9, not at 5:00 PM.  Even if Twitter's last fine were to have accrued at 5:00 PM on February 9, however, the government cannot be blamed for the timeliness of its response on February 9, when Twitter could have resolved all these issues with the government prior to the original return date for the Warrant on January 27, 2023, or even during conversations with Twitter's in-house counsel through February 1, 2023, but Twitter skipped those opportunities.  *See Pigford*, 307 F. Supp. 2d at 58 (quoting *Twelve John Does v. District of Columbia*, 855 F.2d 874, 877 (D.C. Cir. 1988)) ("When a district court determines . . . that a contemnor has 'not done all within its power' to comply with the court's orders, contempt may be appropriate even where compliance is difficult.").

Accordingly, Twitter's civil sanction for failing to comply with the Warrant and the Show Cause Order stands at $350,000.

**III.    CONCLUSION**

For the foregoing reasons, Twitter's Motion is denied, and the NDO shall remain in effect for 180 days from issuance, until, at least, July 16, 2023.  Additionally, Twitter is assessed a $350,000 sanction for failing timely and fully to comply with the Show Cause Order, which sanction is promptly payable to the Clerk of this Court within ten days.  Twitter shall file a notice for filing in the docket of this matter upon payment in full of the sanction.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  March 3, 2023

_____
BERYL A. HOWELL
Chief Judge

35

FILED UNDER SEAL

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER INC. IDENTIFIED IN ATTACHMENT A | Case No. 1:23-SC-31 - BAH<br><br>**UNDER SEAL** |

## TWITTER'S MOTION FOR A STAY PENDING APPEAL

Twitter respectfully moves this Court for a stay of its March 3 order requiring Twitter to pay $350,000 in contempt fines by March 13 ("contempt order"). Twitter seeks this relief to ensure that the court of appeals retains jurisdiction over all issues that Twitter intends to raise on appeal. Twitter filed a notice of appeal on March 7 in this matter, and intends to raise three issues before the court of appeals: (1) whether the Non-Disclosure Order (NDO) should be vacated because it impermissibly infringes Twitter's First Amendment right to inform its user of legal process that might infringe the user's rights; (2) whether contempt was improper because this Court should have granted Twitter's request to delay compliance with the Warrant until after resolution of Twitter's First Amendment challenge to the NDO; and (3) whether this Court's contempt sanction was unduly punitive or otherwise improper because, among other things, Twitter substantially complied in good faith with the Warrant at all relevant times.

Unless the Court grants this motion, the court of appeals could lose appellate jurisdiction over the latter two issues once Twitter pays the $350,000 in contempt fines on March 13 and thereby purges its contempt. As this Court has recognized, "staying sanctions during an expedited appeal" is an appropriate measure to ensure that a contemnor has an opportunity to

1

FILED UNDER SEAL

"press its arguments to a court of review." *In re Grand Jury Investigation of Possible Violations of 18 U.S.C. § 1956 & 50 U.S.C. § 1705*, No. MC 18-175, 2019 WL 2182436, at *5 (D.D.C. Apr. 10, 2019) (Howell, J.), *aff'd sub nom. In re Sealed Case*, 932 F.3d 915 (D.C. Cir. 2019); *see also In re Grand Jury Subpoena No. 7409*, 2018 WL 8334866, at *3 & n.1 (D.D.C. Oct. 5, 2018) (Howell, J.). Twitter seeks a stay for that reason and, consistent with this Court's past instruction, will request that the D.C. Circuit expedite briefing in this case. Indeed, because Twitter has already produced the materials the Government seeks, and because the fines at issue here have already accrued, this is an especially appropriate case for a stay. The stay requested would only delay payment of the fine—not prevent that fine from growing, or delay compliance with the Warrant. And Twitter makes this request only so that it may preserve its right to appeal—an appeal which Twitter will seek to pursue on an expedited basis.

Accordingly, Twitter respectfully requests that this Court stay its contempt order pending appeal. Twitter also respectfully requests that the Court rule on this motion promptly. If the Court does not grant a stay by noon on Thursday, March 9, Twitter intends to seek relief from the D.C. Circuit, so that a stay may be entered before the fine comes due on March 13. If the Court requires more time to consider this motion, Twitter respectfully asks that, in the interim, it enter an administrative stay of its contempt order during the pendency of this motion. The Government has informed counsel for Twitter that it opposes a stay.[1]

## ARGUMENT

A court may issue a stay pending appeal in order "to preserve the jurisdiction of the United States Supreme Court and of [the D.C. Circuit] over the controversies … presented."

---

[1] Twitter presumes the Court's familiarity with the background facts and prior proceedings in this dispute, and so Twitter does not reiterate them in detail here.

FILED UNDER SEAL

*Sawyer v. U.S. Steel Co.*, 197 F.2d 582, 283 (D.C. Cir. 1952); *see* 28 U.S.C. § 1651(a) ("all courts … may issue all writs necessary or appropriate in aid of their respective jurisdictions"); *Nken v. Holder*, 556 U.S. 418, 426-427 (2009).  To determine whether to grant a stay pending appeal, the Court considers four factors:  "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Nken*, 556 U.S. at 434 (quotation marks omitted).  Those factors support a stay here.

## I.   TWITTER WILL BE IRREPARABLY INJURED ABSENT A STAY

A party suffers clear irreparable harm if, absent a stay pending appeal, its appeal may become moot—indeed, avoiding mootness is "[p]erhaps the most compelling justification" for a stay pending appeal.  *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers); *see also, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 2016 WL 3023980, at *7 (D.D.C. May 25, 2016); *People for the Amer. Way Found. v. U.S. Dep't of Educ.*, 518 F. Supp. 2d 174, 177 (D.D.C. 2007).

Twitter faces such a risk here.  Unless the Court's order requiring Twitter to pay the contempt sanction is stayed, Twitter will be forced to pay those sanctions in full by March 13.  But if the "contempt has been purged, the issue presented by" the appeal of the contempt order would be "moot."  *United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987); *see also In re Hunt*, 754 F.2d 1290, 1293 (5th Cir. 1985) ("Generally, the discharge of a civil contempt order by the person held in contempt moots any appeal of the contempt judgment."); *In re Campbell*, 628 F.2d 1260, 1261 (9th Cir. 1980) (collecting cases holding that "once a civil contempt order is purged, no live case or controversy remains for adjudication").

FILED UNDER SEAL

Two of the three issues Twitter intends to raise on appeal could therefore be rendered moot next week, unless the court issues a stay. First, Twitter could lose its ability to appeal its request that its obligation to comply with the Warrant be stayed pending resolution of the dispute over the NDO. The district court's denial of that request, and Twitter's corresponding obligation to produce the records in compliance with the Warrant without awaiting resolution of its dispute over the NDO, is not itself an appealable final order. *See In re Ryan*, 538 F.2d 435, 437 (D.C. Cir. 1976) (an "order compelling … the production of documents" is "not final and hence not appealable"). Instead, the ordinary path to appealing this Court's decision requiring production prior to resolution of the NDO issue is for Twitter to appeal the "contempt judgment" that resulted from Twitter's purported "refus[al] to comply." *Id.* But if that contempt order is purged and the dispute over it mooted, Twitter could lose its vehicle for appealing this Court's underlying decision as to the proper timing of Twitter's production, and the relationship between that timing and Twitter's First Amendment rights. *C.f. Matter of Search of Kitty's E.*, 905 F.2d 1367, 1371 (10th Cir. 1990) ("[I]t is axiomatic that the timing of speech is often crucial to its impact[.]"). And, at the same time, Twitter could permanently lose one of the grounds on which it can contest the contempt sanction, the validity of which is premised on the validity of the underlying production order. Twitter thus risks an irreparable loss of $350,000 dollars, on top of losing the ability to air its arguments on appeal.[2]

---

[2] If Twitter is denied a stay, it will argue on appeal that the mootness exception for issues capable of repetition yet evading review permits the court of appeals to nonetheless exercise jurisdiction over the contempt order and the underlying production order. But there is no guarantee that the court of appeals will agree that the exception applies. Twitter may also be able to persuade the D.C. Circuit that, regardless of whether this Court's contempt determination has become moot, the decision refusing to delay compliance with the Warrant may be reviewed on appeal as an order merging into the court's final judgment regarding the contempt order. *See I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 24 (D.C. Cir. 1986) ("In general, … when an interlocutory order is not appealable and so merges into the final

FILED UNDER SEAL

Twitter's appeal of its good faith defense could also become moot if it is required to pay the contempt sanction now, again irreparably depriving it of an important ground for contesting this Court's $350,000 sanction.  Preserving the status quo by extending the period for Twitter to pay the contempt sanction and purge contempt will avoid that risk entirely.[3]

## II.   NEITHER THE GOVERNMENT NOR THE PUBLIC INTEREST WILL BE HARMED BY A STAY

Other than preserving Twitter's ability to appeal, staying the Court's order will have only a single effect: a temporary delay in the Clerk of Court's receipt of Twitter's payment.  Because that money is due to the Court—not the Government—that delay will not harm the opposing party.  And because Twitter has now complied with the Warrant, there is no risk that delaying Twitter's payment will have any effect on the Government's investigation.  That establishes that both "the harm to the opposing party" and "the public interest" counsel in favor of a stay, because those factors "merge when the Government is the opposing party."  *Nken*, 556 U.S. at 435.

Nor is a temporary delay in the Court's receipt of $350,000 a harm to the public interest in its own right.  *C.f. Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparably injury.").  If the public interest is implicated at all here, it counsels in favor of a stay so that the court of appeals may conclusively determine important legal issues—like the proper manner of resolving

---

judgment, it *is* open to review on appeal from that judgment.").  But there is a risk that the D.C. Circuit could reject that basis for jurisdiction over a once-live contempt controversy.  By contrast, if Twitter's obligation to pay the contempt sanction and thereby purge its contempt is stayed, the appellate court's jurisdiction will stand on firm ground.

[3] If Twitter is denied a stay, it will argue on appeal that its appeal of this Court's rejection of its good faith defense is not moot because that ruling still casts doubt on the propriety of the Court's sanction, or that the decision may be reviewed on appeal as an order merging into the court's final judgment regarding the contempt order.

FILED UNDER SEAL

interconnected production orders and NDOs and the nature and scope of the good faith defense to contempt—that will otherwise be subject to continuing uncertainty and litigation. *C.f. United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953) (there is a "public interest in having the legality of [challenged] practices settled").

## III.   LIKELIHOOD OF SUCCESS

To demonstrate a likelihood of success on the merits, Twitter need only "raise[] serious legal questions going to the merits,'" i.e., questions that are "'a fair ground of litigation.'" *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). This standard governs even though this Court has already "set[] forth" its contrary "views of the law" on the issues being appealed. *Judicial Watch, Inc. v. United States Secret Service*, 2011 WL 13377578, at *1 (D.D.C. Nov. 14, 2011) (Howell, J.).

Here, both issues that may be rendered moot in the absence of a stay—the propriety of the Court's decision to compel compliance before resolving Twitter's challenge to the NDO, and the appropriateness of the Court's sanction—present serious, substantial questions justifying interim relief, notwithstanding the Court's evident disagreement on how to resolve those questions.

### A.   Twitter Has a Serious and Substantial Argument That the Court Erred by Refusing to Delay Compliance With the Warrant Pending Resolution of Twitter's First Amendment Challenge

Twitter has a serious and substantial basis for appealing this Court's refusal to delay compliance with the Warrant pending resolution of Twitter's First Amendment challenge to the NDO. The Court's decision to compel production of the user's account information—the decision which provided the basis for holding Twitter in contempt—before permitting Twitter to communicate the Warrant's existence to the user impermissibly interfered with Twitter's First

6

FILED UNDER SEAL

Amendment rights.  "It is axiomatic that the timing of speech is often crucial to its impact."
*Matter of Search of Kitty's E.*, 905 F.2d at 1371; *see also N.Y. Progress and Protection PAC v.
Walsh*, 733 F.3d 483, 489 (2d Cir. 2013) ("We ought not to be determining what speech is
pressing and what can suffer the law's delay.  That, like deciding what speech is important and
what unimportant, is not for the courts.").  By compelling Twitter to produce a user's account
information while the NDO remained in effect, the Court permanently deprived Twitter of the
opportunity to speak "at the moment when" its speech was "most needed."  *Wood v. Ga.*, 370
U.S. 375, 392 (1962).  That is particularly relevant where, as here, the relevant user (Mr. Trump)
may have available rights and privileges not available to the public.  Here, Twitter's speech was
most needed *before* it handed over Mr. Trump's account information because there is at least a
colorable argument that executive privilege applies in this case, and that the privilege is
irreparably violated upon disclosure of protected communications.  *See Nixon v. Adm'r of Gen.
Servs.*, 433 U.S. 425, 449-455 (1977) (recognizing presence of executive privilege over
confidential presidential communications with respect to Archivist but concluding that
Archivist's "intrusion" was permissible); *Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997)
(discussing same and noting, "*Nixon* cases establish the contours of the presidential
communications privilege").  And Mr. Trump is plainly interested in asserting such a privilege—
just this week, he did so with respect to impending grand jury testimony by former Vice
President Mike Pence.[4]

On appeal, Twitter will argue that this Court's decision to nonetheless order production
before resolving the dispute over the NDO impermissibly deprived Twitter of an opportunity to

---

[4] M. Haberman, *Trump Asks Judge to Block Pence's Testimony to Grand Jury*, N.Y. Times, Mar.
4, 2023, available at https://www.nytimes.com/2023/03/04/us/politics/trump-pence-executive-
privilege.html.

FILED UNDER SEAL

effectively vindicate its time-sensitive First Amendment interest.  At a minimum, the Court

should have adjudicated those questions simultaneously, or deferred production until it had

resolved the First Amendment issue—especially because Twitter had proposed a schedule that

would have permitted the court to resolve both issues within 48 hours of the schedule that the

court ultimately adopted.  *See* Email from Gregory Bernstein, Assistant Special Counsel, to

Chambers of Judge Beryl A. Howell (Feb. 3, 2023, 11:58 EST).  In other circumstances

involving potentially privileged materials, courts have permitted pre-execution challenges to

protect an individual's privilege.  *See, e.g.*, *In re Sealed Search Warrant and Application*, 11

F.4th 1235, 1247 (11th Cir. 2021) ("The whole point of privilege is privacy. … Once the

government improperly reviews privileged materials, the damage … is definitive and

complete."); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 183 (4th Cir. 2019)

(reversing district court's denial of injunction on federal agents reviewing seized privileged

materials obtained through execution of a search warrant); *Klitzman Klitzman & Gallagher v.

Krut*, 744 F.2d 955, 962 (3d Cir. 1984) (granting defendant's motion to return privileged material

seized during execution of search warrant); *United States v. Vepuri*, 585 F. Supp. 3d 760, 762

(E.D. Pa. 2021) (noting that defendant opposed government's use of a filter team and sought

return of records).  But this Court's decision to compel execution before even addressing

Twitter's challenge to the NDO foreclosed any possibility that such a privilege challenge could

be aired at the proper time. *Cf. In re Trump*, 781 F. App'x 1, 2 (D.C. Cir. 2019) ("district court

abused its discretion" by failing to "adequately address" whether it was "preferable" to

"resolv[e] … legal questions" implicating "separation of powers issues" before proceeding with

discovery).  Accordingly, there is at least a fair ground for litigation over whether this Court's

enforcement of the Warrant—and corresponding finding of contempt—was erroneous.

8

FILED UNDER SEAL

That is especially so because Twitter had (and has) a serious and substantial basis for challenging the NDO—and for arguing on appeal that the Court erred in concluding otherwise. As this Court held, Twitter has a First Amendment interest in informing its user of the Warrant, and the NDO operates as a prior restraint on that speech. Doc. 30 at 15-16. The Constitution thus permits the NDO only if the Government shows that the NDO is narrowly tailored to serve a compelling government interest. *See Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015). And, as Twitter has explained, the Government cannot do so because disclosure of the NDO would add no meaningful information to the public's knowledge regarding the Government's search of electronic communications in connection with its investigations of the former President. Contrary to this Court's conclusion, the public is aware not just of the "general contours of the government's investigation," Doc. 30 at 21-22, but also that the investigations target Mr. Trump and a wide range of his associates; that the investigations focus on, among other things, Mr. Trump's involvement in the events of January 6; that the Government has seized electronic communications of Mr. Trump's associates, including those who communicated directly with Mr. Trump; and that the investigations encompass Mr. Trump's personal communications, including those stored electronically, *see* Reply in Support of Mot. to Quash or Vacate at 4, 10. Any reasonable observer would expect the Special Counsel to obtain a Warrant seeking Mr. Trump's electronic communications, including communications made through Twitter. *See id.* at 2. Disclosing the Warrant, then, can reveal nothing of significance about the Government's investigations, and thus would not jeopardize those investigations in any serious way.

### B.  Twitter Has a Serious and Substantial Argument That the Court Erred in Rejecting its Good Faith Defense

Twitter also has a serious and substantial basis for challenging the Court's rejection of its defense that it substantially complied with the warrant in good faith before the deadline. In

FILED UNDER SEAL

rejecting that defense, the Court engaged in an impermissibly backward-looking analysis to justify what, by law, must be a purely remedial—and thus forward-looking—sanction. Civil contempt sanctions must "exert a constant coercive pressure," and may not be "imposed retrospective[ly] for a 'completed act of disobedience,' such that the contemnor cannot avoid or abbreviate the [sentence] through later compliance." *Int. Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828-829 (1994).

As a result, in exacting a contempt penalty, "not only must the District Court consider whether there is indeed a contempt but also whether if so, it be of such magnitude as to warrant retention, in part or to any extent, of the coercive fine originally provided for in contemplation of an outright refusal to obey." *Bhd. of Locomotive Firemen & Enginemen v. Bangor & A. R. Co.*, 380 F.2d 570, 582 (D.C. Cir. 1967). Answering that question involves "consideration of the complexity of the outstanding order, possible ambiguities, the difficulties in arranging compliance and the extent of efforts to obey its terms." *Id.* The focus of an inquiry into a contemnor's "compliance efforts" should not be on "events that occurred before the fine started to accrue." *Washington Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat. Cap. Loc. Div. 689*, 531 F.2d 617, 621 (D.C. Cir. 1976).

But the Court's March 3 decision hinges on exactly such past events. The decision discounts Twitter's diligent efforts from February 7 onward because those measures "occurred only *after* it had already delayed production since January 27." Doc. 30 at 32. It rejects Twitter's good faith defense for that reason and because "[i]f Twitter had been diligent and serious in its good faith intention to comply with the Warrant, … questions" about the Warrant's scope and Twitter's capacity to comply with it "should have been identified, raised, and resolved with the government upon receipt of the Warrant on January 19, 2023." Doc. 30 at 32; *see also*

10

FILED UNDER SEAL

Doc. 30 at 33 ("Twitter's good faith and substantial [compliance] defense fails because it did not attempt to resolve specific questions concerning the Warrant's document demands with the government prior to either the February 7 or February 9, 2023, hearings.").

Putting aside Twitter's strong disagreement with the Court's and the Government's characterization of Twitter's efforts to confer with the Government leading up to February 7, that history cannot, as a matter of law, form the basis for exacting the threatened contempt sanction or for rejecting Twitter's good faith defense. As the Court itself noted, it was "clear" that Twitter was "working hard to" comply with the Warrant requests between the hearing on February 7 and February 9. Sealed Hr'g Tr. (Feb. 9, 2023) at 49. At that point—once Twitter was already substantially complying, in good faith, with the Warrant—monetary sanctions could serve no further remedial function. Yet the Court nonetheless imposed hefty sanctions during that period and rejected Twitter's good faith defense. The Court's sanction order therefore served to punish Twitter, rather than to exclusively "obtain [its] compliance with" the Warrant. *Food Lion, Inc. v. UFCW Int'l Union*, 103 F.3d 1007, 1016 (D.C. Cir. 1997). On appeal, Twitter will argue that this was error—presenting a serious and substantial issue for the D.C. Circuit to resolve.

## CONCLUSION

Twitter respectfully requests that, pending appeal, this Court stay its March 3 order compelling Twitter's payment of $350,000 in contempt fines. Twitter also asks that, if the Court requires additional time to consider this motion, it enter an administrative stay of that order.

11

FILED UNDER SEAL

Dated: March 7, 2023

Respectfully submitted,

Ari Holtzblatt, D.C. Bar 1009913
Benjamin Powell, D.C. Bar 464823
Whitney Russell, D.C. Bar 987238
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Ari.Holtzblatt@wilmerhale.com
Benjamin.Powell@wilmerhale.com
Whitney.Russell@wilmerhale.com
Tel:  (202) 663-6000
Fax:  (202) 663-6363

George P. Varghese *(pro hac vice)*
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston MA 02109
George.Varghese@wilmerhale.com
Tel:  (617) 526-6000
Fax:  (617) 526-6363

*Counsel for Twitter, Inc.*

12

FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of March 2023, I caused the foregoing to be served by email upon:

James Pearce, Assistant Special Counsel

Ari Holtzblatt, D.C. Bar 1009913
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave. NW
Washington, DC 20006
Tel:  (202) 663-6000
Fax:  (202) 663-6363

13