FILED UNDER SEAL

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY TWITTER INC. IDENTIFIED IN ATTACHMENT A | Case No. 1:23-SC-31 - BAH <br><br> **UNDER SEAL** |

## TWITTER'S REPLY IN SUPPORT OF ITS MOTION FOR A STAY PENDING APPEAL

The government does not dispute that absolutely no one—not it, not the public—would be injured by a stay pending appeal. The requirements for a stay pending appeal are "applied flexibly, according to the unique circumstances of each case," *McSurely v. McClellan*, 697 F.2d 309, 317 (D.C. Cir. 1982) (per curiam), and a unique circumstance like this—where "little if any harm [would] befall the other interested [party] or the public" from a stay—presents an especially appropriate occasion for an "order maintaining [that] status quo," *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). Indeed, no decision the government cites—and no decision Twitter is aware of—has denied a stay that would not inflict an iota of harm on anyone.

Given that the other factors *also* favor a stay, there is ample reason for the court to grant Twitter's motion. If a stay is denied, there is a serious and imminent danger that Twitter's arguments on appeal will be mooted when it pays the contempt sanction on Monday, causing it irreparable injury. That is so even though, as the government notes, Twitter's challenge to the decision to hold it in contempt might already be moot were this case being litigated in the Eleventh Circuit. As explained below, the D.C. Circuit is unlikely to follow that court's

1

FILED UNDER SEAL

untenable approach to mootness in this context. And the government's other argument as to irreparable injury—that Twitter's challenge to the sanctions order is not absolutely guaranteed to be mooted by payment—misconstrues the standard for granting a stay. Finally, while the government reiterates its substantive disagreement on the merits—which Twitter recognizes the Court may share—the stay standard does not require that Twitter's positions be indisputably correct but only that they present "'a fair ground of litigation.'" *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986). Nothing in the government's opposition demonstrates that Twitter's arguments fail to clear that bar.

## ARGUMENT

### I. TWITTER WILL BE IRREPARABLY INJURED ABSENT A STAY

As Twitter explained in its motion, avoiding mootness is "'[p]erhaps the most compelling justification'" for a stay pending appeal. *John Doe Agency v. John Doe Corp.*, 488 U.S. 1306, 1309 (1989) (Marshall, J., in chambers). And there is a serious risk that the D.C. Circuit will find Twitter's challenges moot once Twitter satisfies the court's contempt order by paying the imposed sanctions. The government argues that one aspect of Twitter's appeal (its challenge to contempt) is *already* moot, and that the other *might* not be mooted by payment. But the first argument is mistaken, and the latter does not undermine the need for a stay.

#### A. Twitter's Challenge To Whether Contempt Was Improper Is Not Yet Moot

In its motion for a stay, Twitter explained that payment of the court's sanction may render moot any appeal of Twitter's request that its obligation to comply with the Warrant be stayed pending resolution of the NDO dispute. That is because, as the government agrees, *see* Opp. 11, once "contempt has been purged, the issue presented by" the appeal of a contempt order is "moot." *United States v. Griffin*, 816 F.2d 1, 7 n.4 (D.C. Cir. 1987). In response, the government argues that Twitter has *already* purged its contempt—even though the court's order

FILED UNDER SEAL

states that Twitter "is held in civil contempt," Doc. 29 at 1, and Twitter has not yet paid the sanctions imposed for that contempt. See Opp. 10-11.

The government's view is mistaken. The lodestar of the law of mootness is that "a case is not moot if a court can provide an effective remedy." *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008); *see also* Opp. 11-12 (controversy is not moot if "effective remedy is available"). The principal injury—perhaps the only injury—inflicted by a contempt order is the sanction that follows from it. Indeed, most courts have held that a party cannot appeal a contempt order at all if it is unaccompanied by sanctions. *See, e.g.*, *United Airlines, Inc. v. U.S. Bank N.A.*, 406 F.3d 918, 923 (7th Cir. 2005) ("a bare declaration of contempt, without consequences, is neither a final order nor within the scope of the mandamus power"). Accordingly, so long as a contempt sanction remains unpaid, a remedy for the injury inflicted by the corresponding contempt order is available: vacating the contempt order, which eliminates the obligation to pay any sanctions. Therefore, at least until Twitter submits its payment to the court, its injury from the contempt order is indisputably remediable by the court of appeals. If the court of appeals concludes that contempt was improper because the First Amendment required the district court to consider the NDO and production order in tandem, it may vacate the contempt sanctions entered against Twitter, preventing a substantial loss of money. That remedial capacity is not affected at all by the fact that Twitter has already produced the information sought by the Warrant.

The government says otherwise, citing a single Eleventh Circuit decision that it mistakenly claims has collected cases for the proposition that "'a contemnor's compliance with the district court's underlying order moots the contemnor's ability to challenge his contempt adjudication.'" Opp. 11 (quoting *In re Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d 670, 672 (11th Cir. 1992). But the cases collected by the Eleventh Circuit support a *different*

FILED UNDER SEAL

proposition: "'once a civil contempt order is purged, no live case or controversy remains for adjudication.'"  *Grand Jury Subpoena Duces Tecum, 91-02922*, 955 F.2d at 672.  Left unanswered by those cases is what exactly purges a contempt order—compliance with the underlying order, or full satisfaction of contempt sanctions and the lifting of contempt by the court?  The government cites no decision in this Circuit even suggesting that contempt is purged—and an appeal rendered moot—upon compliance with the underlying order.  And many other Circuits appear to have parted ways with the Eleventh.  *See, e.g.*, *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 399 (5th Cir. 1987) ("payment of the sanction would allow [contemnor] to purge itself of contempt"); *Claypool v. Boyd*, 914 F.2d 1490 (per curiam) (unpublished) (4th Cir. 1990) (contemnor who had refused to pay child support "could purge himself of contempt … by paying the child support [and] a $1,500 fine" imposed for the contempt).  Indeed, the D.C. Circuit itself seems inclined to take Twitter's view.  *See Johnston v. Johnston*, 74 F.2d 774, 774 (D.C. Cir. 1934) (explaining that state court had "found the defendant in contempt of court and imposed a fine of $1,400, in default of which the defendant was to be … held in custody until he purged himself of contempt *by payment of the fine*" (emphasis added)).

The consequences of the government's approach would be extraordinary—reinforcing that the D.C. Circuit is highly unlikely to follow the Eleventh Circuit.  Under that approach, the proper method for Twitter to preserve its appellate rights would have been to refuse to produce anything to the government even *after* being held in contempt—prolonging any harm to the government's investigations and quickly threatening financial ruin for the company as fines doubled daily.  But where there is plainly a live controversy and an effective judicial remedy, the

FILED UNDER SEAL

law cannot possibly demand such absurd and catastrophic measures as the price for vindicating the First Amendment's protections.

### B. Twitter's Challenge To The Court's Sanction Could Become Moot Upon Payment

Twitter also argued that paying the contempt sanction could render moot its challenge to the court's sanction itself (again, based on *Griffin* and similar cases). The government does not disagree. Indeed, it expressly acknowledges that other courts of appeals have suggested as much. *See* Opp. 13 n.6 (citing *RES-GA Cobblestone, LLC v. Blake Const. & Dev., LLC*, 718 F.3d 1308, 1315 (11th Cir. 2013)). Instead, the government argues that a stay is unwarranted because it is only "speculative," rather than "certain[]" that the D.C. Circuit will follow that approach and find Twitter's argument mooted upon payment. Opp. 10, 13 n.6 (citing *Citizens for Resp. & Ethics in Wash. v. FEC* ("*CREW*"), 904 F.3d 1014, 1017 (D.C. Cir. 2018) (per curiam)).

But the D.C. Circuit's caution against stays based on "speculative" injuries concerns freewheeling *factual* speculation, not legal uncertainty—to avoid granting a stay "against something merely feared as liable to occur at some indefinite time." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Twitter's irreparable injury does not rely on stringing together a long chain of factual causes, to suggest some generalized danger that might take place at some unknown time. *Cf. CREW*, 904 F.3d at 1019 (PAC's asserted injury from disclosure requirement was too "speculative" because it had not identified any expenditure it "intended to make … that [was] deterred by the" requirement). Rather, Twitter's irreparable injury is concrete and straightforward: Come Monday, there will be a new and significant basis for holding Twitter's claims moot that could be avoided entirely by entering a stay; the only

5

FILED UNDER SEAL

uncertainty is whether the D.C. Circuit would conclude that, as a matter of law, the facts indeed render the appeal moot.

To be sure, Twitter agrees with the government that paying the contempt sanctions *should* not moot its appeal.[1] But the parties' agreement on that jurisdictional point does not resolve the issue; the D.C. Circuit must decide it, and the fact that other courts have charted a different course reinforces the possibility that the D.C. Circuit could reject the government's view. And certainty is not required here; courts routinely issue stays based on a significant possibility that an appeal could be rendered moot. *See, e.g.*, *MediNatura, Inc. v. FDA*, 2021 WL 1025835, at *7 (D.D.C. Mar. 16, 2021) ("The principal reason for a district court to grant an injunction pending appeal based on a showing of less than a likelihood of success is to avoid the *risk* that the case will become moot before the court of appeals has a chance to disagree." (emphasis added)); *Kerr v. United States*, 1985 WL 5962, at *2 (D. Mont. Oct. 15, 1985) ("[T]he *possibility* that denial of a stay would moot an appeal, coupled with a potential First Amendment question, compels the Court to conclude a stay is proper." (emphasis added)); *In re Dexter Distrib. Corp.*, 2009 WL 2154538, at *5 (D. Ariz. July 14, 2009) (stay appropriate if "appeal is *likely* to become moot" (emphasis added)); *State Emps. Fed. Credit Union v. S.G.F. Properties, LLC*, 2015 WL 7573220, at *3 (N.D.N.Y. Nov. 25, 2015) ("The *potential* mooting of an appeal, coupled with the risk of substantial monetary loss, is sufficient to establish irreparable injury." (emphasis added)). This court should do the same.

---

[1] Twitter likewise agrees that holding the money Twitter pays in escrow will help reduce the risk of mootness, *see* Opp. 12, and requests that the court do so with any payment Twitter makes. Twitter further notes that any sanctions payment it makes before its appeal is adjudicated will be under protest.

6

FILED UNDER SEAL

II. **NEITHER THE GOVERNMENT NOR THE PUBLIC INTEREST WILL BE HARMED BY A STAY**

As noted, the government does not deny that a stay would not harm the government or the public in any way. That is unusual (as is the government's effort to block a harmless stay) and heavily favors granting a stay. Nor does the government dispute that the public will be benefited by resolving the legal issues presented in this appeal. *See* Mot. 5-6.

III. **TWITTER'S APPEAL IS SUFFICIENTLY LIKELY TO SUCCEED**

The remaining stay factor—Twitter's likelihood of success—also supports a stay. To start, whether or not the government is correct that abuse of discretion applies here, *see* Opp. 3, the errors Twitter will press on appeal are legal; they do not concern the application of discretion. And as to both issues that may be mooted by a stay, Twitter has identified serious grounds for questioning this court's legal approach.

Though the government asserts that Twitter's challenge to the NDO "was legally irrelevant" to the timing of compliance, Opp. 5, it fails entirely to address the substance of Twitter's argument to the contrary. Twitter's motion explained that the relationship between production and the NDO made its speech highly sensitive to the timing of production and that, by being forced to produce its user's information before being allowed to communicate with that user, Twitter's First Amendment interest was permanently impaired. The government does not dispute any of that.

Instead, the government offers sundry factual distinctions between this case and Twitter's authorities, largely without explaining the legal significance of those distinctions or challenging Twitter's reasoning from those cases. Opp. 5-6. Even the one factual distinction the government does explain further—that Twitter's cases condoning prompt assertions of privilege involved pre-review challenges, rather than pre-execution challenges, Opp. 8—does little to undermine

7

FILED UNDER SEAL

Twitter's argument. In each of those cases, privilege claims were adjudicated promptly after documents had been seized, and the decisions stress the importance of resolving legal challenges *before* the government reviews privileged materials. *See In re Sealed Search Warrant and Application*, 11 F.4th 1235, 1247 (11th Cir. 2021) (interlocutory review necessary because "[o]nce the government improperly reviews privileged materials, the damage to the Intervenors' interests is 'definitive and complete'"); *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 183 (4th Cir. 2019), *as amended* (Oct. 31, 2019) (enjoining filter team's review of seized materials); *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 962 (3d Cir. 1984) (granting defendant's motion, filed within weeks of search, to return privileged material seized during execution of search warrant). The key is that all these cases support *pre-review* adjudication of privileges—precisely what could not occur here as a result of the NDO. And indeed, in *Google LLC v. United States*, on which the government once again relies, *see* Opp. 5, the district court did exactly what Twitter argues was required here: address and resolve a challenge to an NDO before ordering the associated production to proceed. 443 F.Supp.3d 447, 451 (S.D.N.Y. 2020).

The fact that there is no prior decision overlapping *perfectly* with the facts of this case is immaterial. This case is undoubtedly unique. The government is right that no public decision has directly addressed the First Amendment stakes involved in exactly this context: where a blanket non-disclosure order accompanies a warrant that seeks a former President's personal communications from his time in office, as part of a highly public investigation targeting that President. But that hardly undermines the "'serious[ness]'" of the legal question Twitter's appeal raises, *Population Institute*, 797 F.2d at 1078—if anything, the unprecedented nature of this dispute amplifies the seriousness of the question. In the same vein, the government's repeated statement that the scope of executive privilege in this context has not been resolved by

8

FILED UNDER SEAL

past cases counsels in favor, not against, a stay. *See* Opp. 6. Those questions should be adjudicated in an adversarial proceeding with the person who holds and asserts the privilege-- precisely what Twitter's request to postpone production sought to enable.

As for Twitter's challenge to the court's sanction, rather than defending the district court's analysis, the government's opposition repeats the very error that the district court committed: dwelling on the parties' actions prior to February 7. As Twitter argued in its motion, the court's decision failed to conduct the required analysis before imposing the threatened contempt sanction. In particular, the court erroneously focused on "events that occurred before the fine started to accrue," *Washington Metro. Area Transit Auth. v. Amalgamated Transit Union, Nat. Cap. Loc. Div. 689*, 531 F.2d 617, 621 (D.C. Cir. 1976), rather than "consider[ing] … the complexity of the outstanding order, possible ambiguities, the difficulties in arranging compliance and the extent of efforts to obey its terms," *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & A. R. Co.*, 380 F.2d 570, 582 (D.C. Cir. 1967).

Although the pre-February-7 narrative has little bearing on the substantial legal question presented by Twitter's appeal, it bears noting that Twitter—contrary to the government's telling—did exactly what it was supposed to do to enable full judicial review of a good faith legal objection to the Warrant and accompanying NDO. When the government informed Twitter's counsel of the Warrant, Twitter immediately preserved the relevant data. Martin Decl. ¶ 4.[2] It then carefully inspected the Warrant and the accompanying NDO, and concluded that the NDO was facially deficient and that Twitter's First Amendment rights were threatened by immediate compliance with the Warrant so long as the NDO remained in effect. *Id.* at ¶¶ 8-14.

---

[2] Attached as Exhibit A to Twitter's Opposition to the Government's Motion for an Order to Show Cause.

9

FILED UNDER SEAL

Twitter communicated those good faith legal concerns to the government, and alerted the government that the parties should also discuss "technical issues" the parties needed to work through to facilitate eventual production. *Id.* at ¶ 14. To ensure prompt judicial review, Twitter proposed a briefing schedule that would promptly resolve all the parties' outstanding disputes. Email from Gregory Bernstein, Assistant Special Counsel, to Chambers of Judge Beryl A. Howell (Feb. 3, 2023, 11:58 EST). After the court issued its contempt order, Twitter moved with all possible speed to fully comply with the Warrant, despite substantial technical and resource barriers it faced in satisfying the requirements of the government's extraordinarily broad warrant. And now it seeks appellate review on an expedited basis. None of that is bad faith—it is what any party in Twitter's position would be expected to do to ensure a full opportunity to press its First Amendment rights.

## CONCLUSION

Twitter respectfully requests that, pending appeal, the Court stay its March 3 order compelling Twitter's payment of $350,000 in contempt fines. Twitter also asks that, if the Court requires additional time to consider this motion, it enter an administrative stay of that order.

FILED UNDER SEAL

Dated: March 10, 2023

        Respectfully submitted,

        /s/ George P. Varghese
        George P. Varghese *(pro hac vice)*
        WILMER CUTLER PICKERING
          HALE AND DORR LLP
        60 State Street
        Boston MA 02109
        George.Varghese@wilmerhale.com
        Tel: (617) 526-6000
        Fax: (617) 526-6363

        Ari Holtzblatt, D.C. Bar 1009913
        Benjamin Powell, D.C. Bar 464823
        Whitney Russell, D.C. Bar 987238
        WILMER CUTLER PICKERING
          HALE AND DORR LLP
        2100 Pennsylvania Ave. NW
        Washington, DC 20006
        Ari.Holtzblatt@wilmerhale.com
        Benjamin.Powell@wilmerhale.com
        Whitney.Russell@wilmerhale.com
        Tel: (202) 663-6000
        Fax: (202) 663-6363

        *Counsel for Twitter, Inc.*

FILED UNDER SEAL

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March 2023, I caused the foregoing to be served by email upon:

James Pearce, Assistant Special Counsel

George P. Varghese (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston MA 02109
Tel: (617) 526-6000
Fax: (617) 526-6363